Royce GLOVER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0106–CR–384.

Court of Appeals of Indiana.

Jan. 9, 2002.

Victoria Ursulskis, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cecelia K. Hemphill, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Royce Glover ("Glover") appeals his conviction of rape, a Class B felony.[1] We affirm.

### Issues

Glover presents three issues for review:

I. Whether the statute criminalizing rape of an "unaware" person is unconstitutionally vague;

II. Whether there is sufficient evidence to establish that the victim in this case was "unaware"; and

III. Whether the State exercised peremptory challenges in a manner that violated Glover's right to equal protection of the law.

### Facts and Procedural History

On the evening of October 2, 1999, C.F. and J.B., the victim in this case, attended a party at the Indianapolis apartment of Nicholas Washington ("Washington"). (R. 632–33.) Before arriving at the party, they had been drinking gin and orange juice. (R. 109.) They continued to drink at the party. (R. 123.) During the party, J.B. suddenly collapsed in the kitchen. (R. 124.) Washington carried J.B., with her feet dragging on the ground, into a bedroom. (R. 127, 245.) She was mumbling incoherently, with her eyes closed. (R. 128, 191–2.) Soon thereafter, C.F. collapsed and was carried into the same bedroom. (R. 133.)

Later, Desiree Hixenbaugh ("Hixenbaugh") and Jessica Puppe went into the bedroom to check on their friends. (R.

---

1. IND.CODE § 35–42–4–1(a)(2).

134.) Neither girl had pants on, and J.B. was "hanging off the side of the bed." (R. 134.) Washington and Glover were in the room. (R. 135.) Hixenbaugh and Joe Smith ("Smith") decided to take C.F. and J.B. home. C.F. and J.B. were "passed out" and were carried to Smith's car. (R. 139, 142.)

When Hixenbaugh determined that neither of her friends was responsive, and C.F. was not breathing, she summoned an ambulance. (R. 147.) C.F., whose blood alcohol content was .367, never regained consciousness. (R. 330, 385.) J.B., whose blood alcohol content was .377, regained consciousness and reported to a nurse that she had been raped. (R. 331, 348, 352, 377, 395.) Hixenbaugh reported to a police officer that she believed C.F. had been raped.

During the ensuing investigation, Glóver stated that he had consensual sex with J.B. He and Washington were arrested. Glover was charged with the rape of J.B. Washington was charged with the rape of C.F. (R. 31–2.)[2] At the conclusion of a joint trial, Glover was convicted and sentenced to ten years imprisonment. He now appeals.

### Discussion and Decision

#### I. Constitutionality of Indiana Code section 35–42–4–1(a)(2)

 Prior to trial, Washington[3] filed a Motion to Dismiss challenging the constitutionality of Indiana Code section 35–42–4–1(a)(2), which provides in pertinent part:

[A] person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when:

(2) the other person is unaware that the sexual intercourse is occurring ... commits rape, a Class B felony.

Glover orally joined in the Motion to Dismiss and the stated grounds in support thereof, specifically, that the statute is impermissibly vague under both the United States Constitution and the Indiana Constitution because the term "unaware" is undefined. After hearing argument on December 11, 2000, the trial court denied the motion to dismiss. Again at trial, the defendants lodged an unsuccessful motion to dismiss. Glover now contends that he was entitled to dismissal of the charge against him because the statute under which he was convicted is constitutionally infirm.

 When the validity of a statute is challenged, the reviewing court begins with a presumption of constitutionality. *State v. Lombardo,* 738 N.E.2d 653, 655 (Ind.2000). The burden to rebut this presumption is upon the challenger, and all reasonable doubts must be resolved in favor of the statute's constitutionality. *Id.* A statute will not be found unconstitutionally vague if individuals of ordinary intelligence would comprehend it adequately to inform them of the proscribed conduct. *Id.* at 656. The statute need only inform the individual of the generally proscribed conduct; it need not list with exactitude each item of conduct prohibited. *Smith v. State,* 727 N.E.2d 763, 766 (Ind.Ct.App. 2000). A statute is void for vagueness only if it is vague as applied to the precise circumstances of the instant case. *Id.* Likewise, federal vagueness analysis involves an inquiry into whether the prohibitions are clearly defined. *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972).

 Indiana courts have not specifically construed the term "unaware" in the context of the Rape statute, Indiana Code

---

**2.** No criminal charges were filed relative to C.F.'s death.

**3.** Washington and Glover were tried in a joint trial.

section 35–42–4–1(a)(2).[4] However, in *Becker v. State*, 703 N.E.2d 696 (Ind.Ct. App.1998), this Court examined the term "unaware" within the context of the Criminal Deviate Conduct Statute, Indiana Code section 35–42–4–2(a)(2):

> The term "unaware" has not been defined by the legislature. In such circumstances, penal statutes are to be strictly construed against the State and should be held to prohibit only that conduct which is clearly within the spirit and letter of the statutory language. *Marshall v. State*, 602 N.E.2d 144, 147 (Ind.Ct.App.1992), *trans. denied.* However, criminal statutes are not to be narrowed to the point that they exclude cases which the language fairly covers. *Barger v. State*, 587 N.E.2d 1304, 1306 (Ind.1992). Penal statutes should be interpreted in order to give efficient operation to the expressed intent of the legislature. *Id.* Words and phrases are taken in their plain, ordinary, and usual meaning unless a different purpose is manifested by the statute. *JKB, Sr. v. Armour Pharmaceutical Co.*, 660 N.E.2d 602 (Ind.Ct.App.1996), *trans. denied.* Statutes relating to the same general subject matter are in pari materia and should be construed together so as to produce a harmonious statutory scheme. *Sanders v. State*, 466 N.E.2d 424, 428 (Ind.1984).
>
> "Unaware" is defined as "not aware: lacking knowledge or acquaintance; Unconscious." Webster's Third New International Dictionary 2483 (1986 ed.). We have noted that a person is unconscious during sleep. *See Brooks v. Bloom*, 151 Ind.App. 312, 279 N.E.2d 591, 595 (1972).

Moreover, it is the general, if not universal, rule that if a man has intercourse with a woman while she is asleep, he is guilty of rape because the act is without her consent.

*Id.* at 698. We adopt the foregoing definition of the term "unaware" in the context of the Rape statute, Indiana Code section 35–42–4–1(a)(2), which, like the Criminal Deviate Conduct statute, requires that the victim is "unaware" that the sexual act is occurring. Moreover, under the circumstances of the instant case, we hold that the language of the Rape statute may be fairly construed as adequate to inform an individual of ordinary intelligence that sexual intercourse with an individual who has lost consciousness due to inebriation is proscribed.

Accordingly, the trial court properly denied Glover's Motion to Dismiss.

### II. Sufficiency of the Evidence

 To convict Glover of a violation of Indiana Code section 35–42–4–1(a)(2) as charged, the State was required to show that he knowingly or intentionally had intercourse with J.B. while J.B. was unaware that the intercourse was occurring. Glover contends that the State presented insufficient evidence that J.B. was "unaware" that intercourse was occurring. We disagree.

 In reviewing a claim of insufficiency of the evidence, we neither weigh the evidence nor judge witness credibility. *Becker*, 703 N.E.2d at 697. Rather, we examine only the evidence most favorable to the State, along with all reasonable inferences to be drawn therefrom. *Id.* If there is substantial evidence of probative value from which a jury could find guilt

---

4. However, in *Bryant v. State*, 644 N.E.2d 859, 860 n. 1 (Ind.1994), our Supreme Court observed that the victim's illness and intoxication could have, alternatively, caused the Rape charge to be brought under the "unaware" subsection of the Rape statute.

beyond a reasonable doubt, we will affirm. *Id.*

Glover admitted having sexual intercourse with J.B. (R. 865.) J.B. testified that she did not agree to have sex with Glover or to have her clothing removed. (R. 653, 677.) Hixenbaugh testified that J.B. "collapsed" in the kitchen and was so intoxicated at the time she was taken into the bedroom that she could not stand unassisted. (R. 124, 127–28, 133.) She further testified that J.B. was barely mumbling and "making no sense." (R. 127, 139.) She characterized J.B.'s condition during the drive home as "passed out." (R. 142.) Dorien Riddick, another party guest, testified that J.B. "passed out" before being carried to the bedroom. (R. 189.) He described J.B. as incoherent and "mumbling a little." (R. 191–2.) Smith also characterized J.B. as "passed out" and "mumbling." (R. 244–5.) He testified that J.B. was carried, with her feet dragging on the floor, into the bedroom. Dr. Gerald Braverman testified that he examined J.B. at the hospital and found her unconscious due to severe intoxication. (R. 392–3.) J.B. was unresponsive to stimulation, lacking eye movement and spontaneous movement of her extremities. Her pupils were fixed and dilated. (R. 392.) This testimony is sufficient to permit the jury to infer that J.B. was unaware that the act of intercourse was occurring.

### III. Peremptory Juror Challenges

During jury selection, the State exercised peremptory challenges to remove three African–American women from the venire; namely, Ms. Parris, Mrs. Adams and Mrs. Bonds. Ultimately, one African–American woman was selected as a juror. Glover, who is also African–American, moved the court to require the State to explain the exercise of challenges and also moved the court to declare a mistrial. The trial court concluded that the State had advanced race-neutral explanations for the challenges, and denied Glover's motion for a mistrial. In reliance upon *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), Glover now argues that the challenges to three African–Americans denied him equal protection of the law.

The exercise of racially discriminatory peremptory challenges is constitutionally impermissible. *Wright v. State,* 690 N.E.2d 1098, 1104 (Ind.1997) (citing *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)). To raise a prima facie equal protection clause claim, a defendant must establish that (1) the juror is a member of a cognizable racial group; (2) the prosecutor has exercised peremptory challenges to remove that group's members from the jury; and (3) the facts and circumstances of this case raise an inference that the exclusion was based on race. *Id.* The excluded juror need not be of the same race as the defendant. *Id.* Once a defendant makes the requisite prima facie showing, the burden shifts to the prosecutor to provide a race-neutral explanation for the peremptory strikes, and the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. *Id.* On appeal, the trial court's decision on the question of discriminatory intent is accorded great deference. *Id.* Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered generally will be deemed race-neutral. *Id.*

Here, although the trial court did not specifically find that Glover had made the requisite prima facie showing, the court implicitly did so, asking the prosecutor to state her reasons for the peremptory strikes. The prosecutor responded as follows. Mrs. Parris had indicated that her experience with alcohol use was limited to

one instance when she was a teenager, and that the alcohol had made her sick. The prosecutor expressed concern that Mrs. Parris would be unable to appreciate the mental state of very-intoxicated victims. Mrs. Bonds had indicated on the juror questionnaire that she had an upcoming doctor's appointment, and that she expected to "see if she had cancer." (R. 79.) Further, Mrs. Bonds indicated that she "had a hard time coming up with" a rape scenario that did not involve a gun or a knife. (R. 79.) Finally, Ms. Adams made a statement that an individual might be able to give consent to intercourse despite alcohol-induced unconsciousness. The trial court deemed these explanations race-neutral. We agree that the State provided logical non-discriminatory reasons for the strikes. The State is not required to include within the venire jurors who indicate an inability to be fair and impartial. Moreover, the State's responses, as a whole, do not disclose inherent discriminatory intent. Glover has demonstrated no reversible error in this regard.

### Conclusion

The statutory provision under which Glover was charged and convicted is not void for vagueness. The State presented sufficient evidence to establish that the victim was unaware that intercourse was taking place. Finally, Glover was not denied his due process right to a jury of his peers.

Affirmed.

SHARPNACK, J., and DARDEN, J., concur.