Danny F. HAGGARD, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 48A05–0107–CR–285.

Court of Appeals of Indiana.

July 9, 2002.

David W. Stone, IV, Anderson, IN, for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, for Appellee.

## OPINION

MATHIAS, Judge.

Danny F. Haggard ("Haggard") appeals his convictions and sentences in two causes that were consolidated for this appeal. In one case ("the battery case") a jury found Haggard guilty of five counts: Possession

of Cocaine,[1] Battery by Body Waste,[2] Resisting Law Enforcement,[3] Battery Resulting in Bodily Injury,[4] and Unlawful Use of Body Armor,[5] all as Class D felonies. On each of the first four counts, the trial court judge sentenced Haggard to the Department of Correction for three years to be served concurrently. On the unlawful use of body armor conviction Haggard was sentenced to the Department of Correction for three years to be served consecutively with the first three-year sentence. In the second case ("the forgery case"), Haggard pled guilty to seven counts of forgery,[6] all as Class C felonies. The trial court judge sentenced Haggard to the Department of Correction for eight years on each count, with four years executed and four years suspended to probation, all to be served concurrently with each other. The trial court judge ordered Haggard to serve his forgery sentence consecutively with his six-year sentence from the other cause. Therefore, Haggard's aggregate sentence for the two cases was ten years executed with 107 days pre-trial credit against his four year executed sentence in the forgery case.

Haggard raises the following three issues on his direct appeal:

I. Whether his trial counsel provided ineffective assistance when he failed to object to the tendered jury instructions on involuntary intoxication and/or for not tendering a jury instruction on voluntary intoxication;

II. Whether Indiana Code section 35–47–5–13, which defines the crime

of unlawful use of body armor, is unconstitutionally vague; and,

III. Whether the trial court sufficiently articulated the aggravating and mitigating circumstances to support Haggard's sentences.

We affirm.

### Facts and Procedural History

On November 28, 2000, Haggard was charged with seven counts of forgery, all as Class C felonies. He was released on bond within a day or two of his arrest. Then, on January 6, 2001, the Anderson police received a phone call reporting that there was a man at 4114 Fernway Drive, Anderson, Indiana who had injected drugs and was threatening to commit suicide. Officers Abshire and Brooks were dispatched to the residence. Shortly after they arrived at the residence, Officers Williams and Sollars arrived. The officers yelled, announced their presence, and knocked, but no one answered.

After hearing someone calling for help from inside the residence, the officers called the station and received permission from a superior officer to enter the residence. After several kicks to the door, the officers gained entry to the house. They later discovered that the door had been propped closed with a crutch. Upon entry, they heard someone calling from the basement of the residence.

Once in the basement, the officers noticed Haggard sitting amidst what appeared to be a pile of dirty clothes, wearing nothing but a camouflage pattern shirt. Haggard had a sock tied around his right arm, like a tourniquet, and was rocking

---

1. *See* Ind.Code § 35–48–4–6 (1998 & Supp. 2002).

2. *See* Ind.Code § 35–42–2–6 (1998).

3. *See* Ind.Code § 35–44–3–3 (1998 & Supp. 2002).

4. *See* Ind.Code § 35–42–2–1(a)(2) (1998 & Supp.2002).

5. *See* Ind.Code § 35–47–5–13 (1998).

6. *See* Ind.Code § 35–43–5–2 (1998).

with his hands between his legs. An empty syringe was on a table beside Haggard. Officer Sollars positioned himself behind a water heater, approximately two feet from Haggard. From there, Officer Sollars noticed a gun between Haggard's legs and hands. Officer Sollars then repeatedly yelled to Haggard to drop the gun. Just as Haggard began to raise the weapon and Officer Sollars prepared to shoot Haggard, Haggard fell backward. He appeared to have a seizure and then fall asleep.

As Haggard was lying on the basement floor, the officers grabbed Haggard's gun (which turned out to be a BB gun) and attempted to handcuff him for their own safety. After his right hand was cuffed, Haggard awoke and began to struggle with the officers. The officers were eventually able to cuff Haggard's left hand also. He was then rolled onto his stomach. At this time, Officer Sollars noticed what he thought was a back brace under Haggard's shirt while he was patting Haggard on the back in an attempt to calm him.

Two of the officers then climbed the stairs to do a protective sweep and inform the medics that Haggard was in the basement. Haggard began to fight the two officers that remained in the basement. During this scuffle, Haggard turned and bit Officer Sollars' gloved hand twice without piercing his skin and was able to throw Officer Abshire approximately three to four feet into a sump pump area. As Haggard continued to struggle, he spit into Officer Sollars' face. The officers used pepper spray on him, with no apparent effect. Eventually, the officers and medics were able to subdue Haggard, get him cuffed onto a stretcher and then finally into an ambulance and on his way to a hospital.

Officer Sollars rode in the ambulance with Haggard. En route, Haggard asked Officer Sollars several times why he had not shot him. Officer Sollars then asked Haggard why he would want to be shot. Haggard replied, "that is the whole reason why you were called here." Ex. Vol. p. 10. Haggard told Officer Sollars that he was "too chicken to" shoot himself. *Id.* Also while in the ambulance Haggard told Officer Sollars that he had AIDS, even though later his blood tests came back positive for only Hepatitis C and cocaine. The officers seized Haggard's shirt after it had been removed from him at the hospital. It was at this point that they noticed that body armor had been sewn into the front and back of the shirt.

On January 8, 2001, an information was filed charging Haggard with five counts: possession of cocaine, battery by body waste, resisting law enforcement, battery resulting in bodily injury, and unlawful use of body armor, all Class D felonies. Then on February 8, 2001, Haggard's bond in his pending forgery case was revoked after a hearing. A jury trial on the battery case took place in late April 2001, and Haggard was found guilty of all five offenses. Among other issues, the jurors were instructed on the defense of intoxication.

On May 8, 2001, Haggard pled guilty to all seven counts in his forgery case. Consolidated sentencing was set for May 23, 2001. The trial court judge sentenced Haggard to the Department of Correction for three years on each of the D felony charges. The sentences on the first four counts were ordered to run concurrently, but Haggard's sentence on Count V, unlawful use of body armor, was ordered to run consecutively to the sentence on the other four counts, for a total of six years. For the guilty plea to the seven forgery charges, the trial court judge sentenced Haggard to the Department of Correction for eight years for each charge, with four years executed and four years suspended. The trial court judge ordered them to run

concurrently with each other, but consecutively to Haggard's six-year sentence in the battery case. Haggard received 107 days of pre-trial detention credit. Haggard was assessed a $200.00 fee, and ordered to pay restitution in the amount of $219.45 to Officer Sollars and $3315.07 to Harvest Market.

Haggard now appeals both causes in this consolidated appeal. Additional facts will be provided as necessary.

## I. Ineffective Assistance of Counsel

Haggard argues that his trial counsel was ineffective because he failed to object to an allegedly erroneous tendered jury instruction on the defense of intoxication and because he failed to tender what Haggard believed was a correct instruction. Haggard specifically argues that if a correct instruction had been tendered explaining that Haggard was unable to form the requisite intent to commit various offenses, it would have been reversible error for the trial court to refuse to give it.

Ineffective assistance of counsel claims are governed by a two-part test. First, the defendant must show that counsel was deficient, i.e., "show[ ] that counsel's representation fell below an objective standard of reasonableness and that counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed to the defendant by the Sixth Amendment." *Wrinkles v. State,* 749 N.E.2d 1179, 1188 (Ind.2001) (citing *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Second, the defendant must prove that counsel's deficient performance prejudiced the defendant, i.e., show that defendant was deprived a fair trial with a reliable result, and show that there is a reasonable probability that with effective assistance, the result of the proceeding would have been different. *Id.* at 1188–89 (citing *Strickland,* 466 U.S. at 687, 694, 104 S.Ct. 2052).

There is a presumption of effective assistance of counsel and in order to overcome the presumption, defendant's evidence must be strong and convincing. *Id.* at 1189 (citing *Ben–Yisrayl v. State,* 729 N.E.2d 102, 105 (Ind.2000)). "[P]oor trial strategy, bad tactics, a mistake, carelessness, or inexperience do not necessarily amount to ineffective assistance of counsel." *Id.* (citing *Carr v. State,* 728 N.E.2d 125, 131 (Ind.2000)).

The two intoxication instructions in this case were verbatim from the Indiana Code and therefore current law. The instructions read:

[Indiana Code section] 35–41–2–5. Intoxication not a defense[.] Intoxication is not a defense in a prosecution for an offense and may not be taken into consideration in determining the existence of a mental state that is an element of the offense unless the defendant meets the requirements of [Indiana Code section] 35–41–3–5.

[Indiana Code section] 35–41–3–5. Intoxication[.] It is a defense that the person who engaged in the prohibited conduct did so while he was intoxicated, only if the intoxication resulted from the introduction of a substance into his body: (1) Without his consent; or (2) When he did not know that the substance might cause intoxication.

Appellant's App. pp. 40–41; *see also* Ind. Code §§ 35–41–2–5 (1998), 35–41–3–5 (1998).

Unfortunately for Haggard in this case, his entire argument on this issue fails to acknowledge the Indiana Supreme Court's 2001 decision on this issue, *Sanchez v. State,* 749 N.E.2d 509 (Ind.2001), which clarified the application of these statutes. In *Sanchez,* our supreme court made it clear that the statutes do not allow the defense of voluntary intoxication to negate

mens rea. *Id.* at 517. Rather, our supreme court found that "the voluntarily intoxicated offender [is] at risk for the consequences of his actions, even if it is claimed that the capacity has been obliterated to achieve the otherwise requisite mental state for a specific crime." *Id.* In conclusion, the supreme court held that "[t]he statute redefines the requirement of mens rea to include voluntary intoxication, in addition to the traditional mental states, i.e., intentionally, knowingly, and recklessly. Thus, evidence of voluntary intoxication does not negate the mens rea requirement.... Rather, it satisfies this element of the crime." *Id.* at 520.

■ Based upon the clear language of the intoxication statutes, our supreme court's decision in *Sanchez,* and the fact that the tendered jury instructions were verbatim from the statutes at issue, we conclude that had Haggard's trial counsel objected to the tendered instructions and/or submitted what Haggard claims to be the correct statement of law, any objection would have been overruled and any instruction stating that voluntary intoxication could be a defense to a specific intent crime would properly have been denied by the trial court. Therefore, we conclude that Haggard's trial counsel did not provide ineffective assistance of counsel.

## II. Constitutionality of Unlawful Use of Body Armor Statute

Haggard next argues that Indiana's unlawful use of body armor statute is unconstitutionally vague and therefore void. He specifically argues that the definition of "body armor" is not clearly defined in the statute, which reads:

> (a) As used in this section, "body armor" means bullet resistant metal or other material worn by a person to provide protection from weapons or bodily injury.
>
> (b) A person who knowingly or intentionally uses body armor while committing a felony commits unlawful use of body armor, a Class D felony.

Ind.Code § 35–47–5–13 (1998).[7]

It is well established that when the validity of a statute is challenged, our court must first start with the presumption that the complained of statute is constitutional. *Glover v. State,* 760 N.E.2d 1120, 1123 (Ind.Ct.App.2002), *trans. denied* (citation omitted); *Cooper v. State,* 760 N.E.2d 660, 664 (Ind.Ct.App.2001), *trans. denied* (citation omitted). The party challenging the statute has the difficult burden of rebutting this presumption, and all doubts must be resolved against that party. *Glover,* 760 N.E.2d at 1123; *Cooper,* 760 N.E.2d at 664.

A statute will not be found unconstitutionally vague if individuals of ordinary intelligence would comprehend it adequately to inform them of the proscribed conduct. Additionally, a statute need only inform the individual of the prohibited conduct in general terms; it need not be exact. A statute will only be held to be

---

7. Preliminarily, we note that the State correctly points out that Haggard failed to argue the vagueness doctrine to the trial court. Moreover, Haggard's trial counsel adamantly argued that his motion to dismiss was based upon the broadness doctrine, and *not* the vagueness doctrine. Tr. pp. 15–22. At one point, he stated during his colloquy with the trial court judge, "I am hearing you talk about the vagueness doctrine where there could be more that one interpretation. I am talking about the broadness doctrine where the statute prohibits conduct that the legislature did not intend to prohibit." *Id.* at 19. Nonetheless, either party may raise the constitutionality of a statute at any time during the proceeding and our court may even raise the constitutionality issue sua sponte. *Cooper v. State,* 760 N.E.2d 660, 664 (Ind.Ct.App. 2001) (citation omitted).

void for vagueness if it is vague as applied to the precise facts and circumstances of each case. Lastly, a statute is not necessarily vague even though a party can show that the legislature could have provided more precise language. *See Glover,* 760 N.E.2d at 1123, *Cooper,* 760 N.E.2d at 664.

Haggard argues that Indiana Code section 35–47–5–13 gives no clear guidance as to what constitutes body armor. Br. of Appellant at 15. In support of his argument, Haggard cites to statutes from Florida, Illinois and Oklahoma. He argues that those states' statutes provide better, more-exact definitions of body armor than does our statute. *Id.* at 14–15. Haggard also presents the following hypothetical in an attempt to show that the statute is unconstitutionally vague: "Does a metal breast plate worn by a person going to a costume party as a Roman soldier and who is involved in a traffic arrest and becomes belligerent with the officer meet the criteria?" *Id.* at 14. Unfortunately for Haggard, he was not dressed as a Roman soldier and on his way to a costume party at the time of his conduct at issue in this case; it is his specific conduct that controls his vagueness claim. *See Glover,* 760 N.E.2d at 1123 (citing *Smith v. State,* 727 N.E.2d 763, 766 (Ind.Ct.App.2000)).

■ After receiving a call reporting drug use and a possible suicide, Haggard was found in his basement amidst a pile of apparently dirty clothes, with a sock tied around his arm as a tourniquet, a syringe on a table beside him, and clothed in nothing but a camouflage pattern shirt. After several scuffles with police, during which pepper spray had no subduing effect on Haggard, and after having to be handcuffed to a stretcher, when Haggard was finally in an ambulance, he spoke with Officer Sollars and stated that he had wanted to be shot by the police. Ex. Vol. p. 10. He even admitted that he was trying to kill himself by injecting drugs. Ex. Vol. p. 19. While at the hospital, Haggard's shirt was removed and the police seized it as evidence. At that point, they noticed that body armor had been sewn into the front and back of the shirt. Officer Sollars testified that a bulletproof vest was sewn into Haggard's shirt, but he could not say with certainty the exact material of which it was made. Under these actual, rather than hypothetical facts and circumstances, the statute is not unconstitutionally vague.

## III. Sentencing Statement

■ Haggard lastly argues that the trial court failed to make proper findings to justify enhancing his sentence in the forgery case, failed to make proper findings to support the consecutive sentence imposed in the battery case, and it improperly ignored the mitigating factor that Haggard pled guilty in his forgery case. "Sentencing lies within the discretion of the trial court." *Price v. State,* 725 N.E.2d 82, 85 (Ind.2000) (citation omitted). "Although a trial court may have acted within its lawful discretion in determining a sentence," *Buchanan v. State,* 767 N.E.2d 967, 972 (Ind.2002), Article 7, Section 6 of the Indiana Constitution authorizes independent appellate review and revision of a sentence imposed by the trial court. "This appellate authority is implemented through Indiana Appellate Rule 7(B), which provides: 'The Court shall not revise a sentence authorized by statute unless the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender.'" *Id.* at 972–73 (citing App. R. 7(B)).

### A. Sentence Enhancements

Haggard argues that the trial court failed to make the proper findings to justi-

fy sentence enhancements in his forgery case.

### 1. *The Nature of the Offense*

■ That portion of Indiana Appellate Rule 7(B) that looks to the "nature of the offense" speaks to the statutory presumptive sentence for the class of crimes to which the offense belongs. *See Hildebrandt v. State,* 770 N.E.2d 355, 361 (Ind. App.2002). The classifications and their respective presumptive sentences, enhancements, and reductions have been determined by the General Assembly as matters of public policy. The presumptive sentence is meant to be the starting point for the court's consideration of which sentence is appropriate for the crime committed. *See Lander v. State,* 762 N.E.2d 1208, 1214–15 (Ind.2002); *Bustamante v. State,* 557 N.E.2d 1313, 1321 (Ind.1990).

In this case, Haggard was sentenced to eight years each, for the seven Class C felony forgeries, with four years executed and four years suspended on each. These were maximum sentences under Indiana Code section 35–50–2–6, the presumptive sentence being four years. *See* Ind.Code § 35–50–2–6(a) (1998). However, Haggard was ordered to serve all seven Class C felonies concurrently for an effective total of four years executed and four years suspended.

### 2. *The Character of the Offender*

"The character of the offender" under Indiana Appellate Rule 7(B) speaks to the general sentencing considerations under Indiana Code section 35–38–1–7.1(a) and the balancing of aggravating and mitigating circumstances under Indiana Code section 35–38–1–7.1(b) and (c), as well as the other factors left to the trial court's discretion under section 35–38–1–7.1(d). *See Hildebrandt,* 770 N.E.2d at 361.

■ The trial court is not limited to considering the statutory factors and circumstances, but may also consider other aggravating or mitigating circumstances in determining the sentence. *See* Ind.Code § 35–38–1–7.1(d). Like the presumptive sentence, the mandatory factors, enumerated aggravating and mitigating circumstances, and the trial court's discretion have been determined and recognized by the General Assembly as matters of public policy. Trial courts must balance aggravating factors against any mitigating factors to determine the proper sentence enhancement or reduction.

■ At Haggard's consolidated sentencing hearing, the trial court judge found the following aggravating circumstances: (1) Haggard has an extensive juvenile record; (2) Haggard has an adult record including convictions of theft and burglary in 1979 and resisting arrest in 1994; and, (3) the circumstances of the battery case were "bizarre, unexplainable, and inexcusable." Tr. p. 256. Even though the third aggravator clearly goes to the battery case, and not the forgery case, the other two aggravators could support enhancements in either case, or both. These two generic aggravators alone are proper under Indiana Code section 35–38–1–7.1 to support a sentence enhancement.[8] Even a single aggravating circumstance is sufficient to support a sentence enhancement. *Price,* 725 N.E.2d at 85 (citation omitted). Under these facts and circumstances we conclude that the trial court did not abuse its discretion when it determined the aggravating factors in this case, and Haggard's eight-year sentence (with

---

8. The applicable proper aggravators considered in this case are under Indiana Code section 35–38–1–7.1: any prior criminal record, and any prior delinquent activities. *See* Ind.Code §§ 35–38–1–7.1(a)(3)(A), 35–38–1–7.1(b)(2).

four years executed and four years suspended) on each of the seven Class C felony forgeries, to be served concurrently, was not manifestly unreasonable.

### B. Consecutive Sentences

■■■ Haggard's next argument is that the record is devoid of an explanatory statement with regard to the trial court judge's reason for imposing a consecutive sentence upon him in his battery case. "Indiana Code section 35–38–1–7.1(b) permits sentences to be imposed consecutively if aggravating circumstances warrant or to be suspended in favor of probation if mitigating circumstances warrant." *Hildebrandt*, 770 N.E.2d at 364 (citing Ind.Code § 35–38–1–7.1(b) & (c) (1998)). "The decision to enhance a presumptive sentence or to impose consecutive sentences for multiple offenses is generally within the trial court's discretion." *Id.* (quoting *McCarthy v. State*, 749 N.E.2d 528, 539 (Ind.2001)). If a trial court imposes a consecutive sentence even though not required by statute to do so, this court will examine the record to insure that the court explained its reasons for selecting the sentence it imposed. *Archer v. State*, 689 N.E.2d 678, 683 (Ind. 1997) (citing *Hammons v. State*, 493 N.E.2d 1250, 1254 (Ind.1986)).

■■■ "The imposition of consecutive sentences is a separate and discrete decision from sentence enhancement...." *Ajabu v. State*, 722 N.E.2d 339, 344 (Ind. 2000) (citations omitted). However, "statutory provisions regarding sentence enhancement and consecutive sentencing are not mutually exclusive." *Thorne v. State*, 687 N.E.2d 604, 605 (Ind.Ct.App.1997), *trans. denied.* Further, "a single aggravating circumstance may be used both to enhance a sentence and to impose consecutive sentences." *Allen v. State*, 722 N.E.2d 1246, 1253 (Ind.Ct.App.2000). Appellate review of the trial court's·determination to impose a sentence concurrently or consecutively must focus on the character of the offender under Appellate Rule 7(B), "as more broadly defined by the *aggregate conduct* of the multiple convictions at issue." *Hildebrandt*, 770 N.E.2d 355, 364–65 (emphasis in original).

■■■ In the battery case, Haggard was sentenced to three years for each of the five Class D felonies, the maximum possible under Indiana Code section 35–50–2–7. Nevertheless, he was ordered to serve four of the five sentences concurrently, and was only ordered to serve the sentence for his unlawful use of body armor conviction consecutively to his sentence on the other four convictions. Therefore, Haggard's aggregate sentence under the battery case was six years. Had the trial court decided to order all five convictions to be served consecutively, Haggard could have faced an effective sentence of up to fifteen years.

As noted above, the trial court judge found that the circumstances of the battery case were "bizarre, unexplainable, and inexcusable." Tr. p. 256. Haggard was discovered in his basement with a syringe beside him on a table, a sock tied around his arm like a tourniquet, what appeared to be a handgun between his hands and legs, clothed only in a camouflage pattern shirt that had body armor sewn into the front and back. Haggard repeatedly fought against the officers that were trying to assist him, bit and spit at one officer, and eventually told one of the officers that he had wanted the police to shoot him. Given the maximum possible sentence Haggard could have faced in his battery case, the nature of his offenses and Haggard's character, it was not manifestly unreasonable for the trial court to sentence him to serve his sentence for unlawful use of body armor consecutively to his other four convictions in his battery case for an

aggregate of six years executed in that case.

### C. Pleading Guilty as a Mitigating Factor

 Haggard's last argument is that the trial court improperly ignored the mitigating factor of his guilty plea in the forgery case. "The finding of mitigating factors is not mandatory and rests within the discretion of the trial court." *Ajabu,* 722 N.E.2d at 344 (citation omitted).

 A guilty plea can show that a defendant accepts responsibility for his actions, but it is not enough to prove that the defendant is remorseful for his actions. *Sensback v. State,* 720 N.E.2d 1160, 1164 (Ind.1999) (citation omitted). Our supreme court has concluded that "[w]here the State reaps a substantial benefit from the defendant's act of pleading guilty, the defendant deserves to have a substantial benefit returned." *Id.* (citation omitted). Nevertheless, even though a guilty plea can be considered a mitigating factor, it is not automatically a significant mitigating factor. *Id.*

In this case, Haggard pled guilty to seven counts of forgery, as Class C felonies. With the plea the State stipulated that this was one criminal episode. The State also agreed to dismiss a Class D felony theft charge pending against Haggard in another cause. While Haggard clearly received a benefit from his plea, it is less certain that the State received a substantial reciprocal benefit. Under these circumstances, and because the trial court does not have to consider a guilty plea as a significant mitigating factor, we conclude that the trial court did not abuse its discretion when it did not consider his plea agreement as a mitigating factor during sentencing.

### Conclusion

Because we conclude that Haggard's trial counsel did not provide ineffective assistance, that the unlawful use of body armor statute is not unconstitutionally vague, that the trial court did not abuse its discretion in sentencing Haggard, and Haggard's sentences were not manifestly unreasonable, we affirm the trial court's decision.

Affirmed.

BARNES, J., and KIRSCH, J., concur.