French C. MASON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–1005–CR–475.

Court of Appeals of Indiana.

Feb. 24, 2011.

Transfer Denied May 24, 2011.

Ellen M. O'Connor, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellant–Defendant, French C. Mason (Mason), appeals his conviction for resisting law enforcement, a Class D felony, Ind.Code § 35–44–3–3; and unlawful use of body armor, a Class D felony, I.C. § 35–47–5–13.

We affirm.

*ISSUE*

Mason raises one issue on appeal, which we restate as follows: Whether the State produced sufficient evidence to prove beyond a reasonable doubt that he committed the crimes of resisting law enforcement and unlawful use of body armor.

*FACTS AND PROCEDURAL HISTORY*

On November 26, 2008, the Indianapolis Metropolitan Police Department received a report of a burglary in progress at the Brighton Park Apartments in Indianapolis, Indiana. Officers Robert McNeil (Officer McNeil), Adam Lee (Officer Lee), and William Sage (Officer Sage) responded to the scene separately, but at approximately the same time. Shortly after arriving, Officer McNeil came across two individuals in the parking lot and started to question them. Officer McNeil's questioning was interrupted, though, when Officer Sage notified him that he had located the apartment of the alleged burglary and that a person was fleeing the premises. Officer McNeil and Officer Lee joined the pursuit of the person fleeing the apartment, but did not catch him. Instead, Officer Lee heard a door slam in the vicinity.

At that point, the officers began checking the cars and encountered a man in front of the apartment where the burglary had allegedly taken place. Officer McNeil told the man to leave, and the man went to the back of a car that was parked in the carport. He opened the back side driver's door, and the officers saw two men lying in the back seat of the car. The two men were later identified as Mason and Albert Jones (Jones). Officer McNeil identified himself and the other officers as police officers several times and told the men to step out of the car. The man that had opened the car door walked back to the sidewalk with the officers, but Mason moved into the front seat and drove the

car out at an "extremely high rate of speed," straight towards Officer McNeil. (Transcript p. 68). Officers McNeil and Lee fired several shots at the car, and the car slowed to a slow roll. At that time, Jones, who was still in the backseat, exited the car and surrendered himself to the officers.

After Jones' exit, Mason persisted in his efforts to drive the car. He crashed into a couple of cars and put the car into reverse and then forward multiple times. Officer McNeil tried to smash the window of the vehicle to stop Mason, and he yelled several times for Mason to stop. Eventually, Captain Joseph Mason arrived and put his vehicle nose to nose with Mason's vehicle to prevent him from fleeing. Officer McNeil opened a door to the vehicle and tased Mason three times. Officer David Loyal also arrived and tased Mason. At that point, Mason exited the vehicle and surrendered himself to the officers. Mason was injured, so the officers called an ambulance. On the way to the hospital, the officers noticed that Mason was wearing a bullet proof vest. Mason later informed the police that he was wearing body armor because he had been attempting to sell it to residents of Brighton Park Apartments that night.

On December 8, 2008, the State filed an Information charging Mason with Count I, burglary, a Class B felony, I.C. 35–43–2–1; Count II, attempted battery, a Class C felony, I.C. §§ 35–42–2–1 and 35–41–5–1; Count III, unlawful use of body armor, a Class D felony, I.C. § 35–47–5–13; Count IV, resisting law enforcement, a Class D felony, I.C. § 35–44–3–3; Count V, resisting law enforcement, a Class A misdemeanor, I.C. § 35–44–3–3; Count VI, resisting law enforcement, a Class A misdemeanor, I.C. § 35–44–3–3; Count VII, criminal mischief, a Class A misdemeanor, I.C. § 35–43–1–2; Count VIII,

criminal mischief, a Class A misdemeanor, I.C. § 35–43–1–2; and Count IX, operating never having received a license, a Class C misdemeanor, I.C. § 9–24–18–1. On March 22 and 23, 2010, a jury trial was held. At the close of evidence, the jury found Mason guilty of Count III, unlawful use of body armor and Counts IV, V, and VI, resisting law enforcement. On April 7, 2010, the trial court merged the three Counts of resisting law enforcement and sentenced Mason to two years for resisting law enforcement and two years for unlawful use of body armor, with sentences to run concurrently.

Mason now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

On appeal, Mason argues that the State failed to provide sufficient evidence that he committed resisting law enforcement or unlawful use of body armor. The standard of review for a sufficiency of the evidence claim is that a court should only reverse a conviction when reasonable persons would not be able to form inferences as to each material element of the offense. *Perez v. State*, 872 N.E.2d 208, 212–213 (Ind.Ct. App.2007), *trans. denied.* This court does not reweigh evidence or judge the credibility of witnesses. *Id.* at 213. In addition, this court only considers the evidence most favorable to the verdict and the reasonable inferences stemming from that evidence. *Id.*

### II. *Resisting Law Enforcement*

 Here, Mason argues that the trial court should not have convicted him for resisting law enforcement because the State did not provide sufficient evidence to prove that he knew Officers McNeil and Lee were police officers. A person resists law enforcement if that person:

flees from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop[.]

I.C. § 35–44–3–3(a)(3). Resisting law enforcement can be a Class D felony if, while committing it, a person uses a vehicle. I.C. § 35–44–3–3(b)(1)(A). To be convicted for resisting law enforcement, though, the evidence must show that the defendant knew or had reason to know that the person resisted was a police officer. *Eberle v. State*, 942 N.E.2d 848 (2011).

We cannot agree with Mason's argument that he did not know Officer McNeil and Officer Lee were police officers because there is sufficient evidence in the record to show that he did know their identities. The record shows that Officers McNeil and Lee both yelled to Mason at many points that they were police officers and that he should get out of the car. In addition, both officers were wearing police uniforms and did not make any attempts to hide their identities. We also find it especially significant that Jones was in the car along with Mason, heard the officers identify themselves as police officers, and subsequently surrendered himself.

Mason argues that he did not understand that the officers were police officers because he was disoriented from his injury. This explanation does not account for Mason's initial behavior before the officers started shooting at the car, though, even if we could consider his injury a plausible justification for his later actions. Before the officers started shooting, Mason drove at an "extremely high rate of speed" towards Officer McNeil. (Tr. p. 68). At the time, he was not injured, and the officers had already identified themselves. Based on these circumstances, we cannot conclude that Mason did not have reason to

know that Officers McNeil and Lee were police officers.

In addition, Mason also seems to argue that he did not knowingly resist law enforcement because his injury caused his erratic driving. Similarly, this explanation does not justify Mason's initial behavior before he was wounded. Moreover, after his injury, Mason had the presence of mind to shift his gears multiple times between reverse and forward as necessary. When we interpret this evidence in the light most favorable to the trial court's verdict, there is more than sufficient evidence to show that Mason resisted law enforcement. Additionally, his crime rose to the level of a Class D felony because he resisted law enforcement in a vehicle.

III. *Unlawful Use of Body Armor*

Finally, Mason argues that he wore body armor coincidentally, rather than to protect himself from law enforcement. Pursuant to Indiana Code section 35–47–5–13(a), "body armor" refers to any bullet-resistant metal or other material worn by a person to provide protection from weapons or bodily injury. A person who knowingly or intentionally uses body armor while committing a felony commits unlawful use of body armor, a Class D felony. I.C. § 35–47–5–13(b). There is very little case law, however, to clarify what qualifies as "use" of body armor.

The one Indiana case that discusses the crime of unlawful use of body armor is *Haggard v. State*, 771 N.E.2d 668 (Ind.Ct. App.2002). There, Haggard injected drugs and threatened to commit suicide. *Id.* at 670. As a result, police officers were dispatched to his residence. *Id.* This court described the facts of the case as such:

> Once in the basement, the officers noticed Haggard sitting amidst what appeared to be a pile of dirty clothes, wearing nothing but a camouflage pat-

tern shirt. Haggard had a sock tied around his right arm, like a tourniquet, and was rocking with his hands between his legs.... Officer Sollars noticed a gun between Haggard's legs and hands. Officer Sollars then repeatedly yelled to Haggard to drop the gun. Just as Haggard began to raise the weapon and Officer Sollars prepared to shoot Haggard, Haggard fell backward. He appeared to have a seizure and then fall asleep.

*Id.* at 670–71. When Haggard woke up, he struggled to fight the police officers, but the officers eventually subdued him and put him in an ambulance to receive treatment. *Id.* at 671. Officer Sollars rode in the ambulance with Haggard, and Haggard asked Officer Sollars several times why Officer Sollars had not shot him. *Id.* Officer Sollars then asked Haggard why he would want to be shot. *Id.* Haggard replied, "[T]hat is the whole reason why you were called here." *Id.* Haggard further clarified that he wanted to kill himself but was too "chicken" to shoot himself. *Id.* In the ambulance, though, the police officers discovered that Haggard had body armor sewn into the front and back of his shirt. *Id.*

*Haggard* raises issues relevant to the instant case because the court there held that Haggard's actions amounted to unlawful use of body armor; nevertheless, the decision is unclear with respect to how the court interpreted "use." We think that two possible interpretations of "use" in Indiana Code section 35–47–5–13(b) are: (1) that merely wearing body armor constitutes use; or (2) that in order to "use" body armor, one must expect it to afford reasonable protection during the commission of a felony. *Haggard* does not clarify which of these interpretations is controlling, though. *Haggard's* words indicate that he expected the police to shoot him, which implicates the latter interpretation

of "use," whereas if his intent is, as he states, to kill himself, the use of the body armor does not make sense in the context of protecting him while he is committing a felony. Under that interpretation of the facts of the case, Haggard "used" body armor merely by wearing it.

Because we cannot construe how the court in *Haggard* interpreted "use," we do not find *Haggard* controlling here. Moreover, on appeal, Haggard did not challenge the sufficiency of the State's evidence towards proving the elements of the crime, so this court has never interpreted the elements of unlawful use of body armor. *See Haggard,* 771 N.E.2d at 677.

Webster's II New College Dictionary defines "use" as "[t]o bring or put into service or action;" or, alternatively, "to put to some purpose." WEBSTER'S II NEW COL-LEGE DICTIONARY 1215 (2001). In the context of unlawful use of body armor, this definition of "use" favors our interpretation that a defendant must "knowingly or intentionally" use body armor as protection in the course of a felony; it is not sufficient to show that a defendant merely wears body armor while committing a felony. *See* I.C. § 35–47–5–13(b). Merely wearing body armor would not "put it into service or action" or "put [it] to some purpose." *See* WEBSTER'S II NEW COLLEGE DICTIONARY 1215 (2001).

■■■ Here, Mason does not dispute that he knowingly or intentionally wore body armor, but he does dispute that he knowingly or intentionally wore it as protection against law enforcement. We cannot agree with this assertion, however. We have previously held that "intent is a mental function and without a confession, it must be determined from a consideration of the conduct, and the natural consequences of the conduct." *Hayworth v. State,* 798 N.E.2d 503, 508 (Ind.Ct.App.

2003). Accordingly, intent may be proven by circumstantial evidence. *Id.* at 508.

There is sufficient evidence in the record to show that Mason intended to wear body armor to protect himself in the commission of resisting law enforcement. The "natural consequence" of his resistance and his decision to drive towards Officer McNeil was that the officers would use force to prevent his escape. Moreover, it is likely that his body armor did protect him from such force. He suffered an eye injury, but the officers also fired five additional shots towards his car that could have otherwise injured him elsewhere. Later, when the officers tried to tase Mason, there was evidence that one of the tases was ineffective. In light of this evidence, we think that the trial court had sufficient evidence to conclude that Mason intended to wear body armor in the aid of the felony of resisting law enforcement through the use of a vehicle.

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly convicted Mason of resisting law enforcement and unlawful use of body armor.

Affirmed.

ROBB, C.J., and BROWN, J., concur.