## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 30 2018, 8:52 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Brian Woodward
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney
General

## IN THE
# COURT OF APPEALS OF INDIANA

Michelle Faye Gonzales Hughes,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 30, 2018

Court of Appeals Case No.
18A-CR-112

Appeal from the Lake Superior
Court

The Honorable Diane Ross
Boswell, Judge

Trial Court Cause No.
45G03-1509-MR-6

**Pyle, Judge.**

# Statement of the Case

Michelle Hughes ("Hughes") appeals the thirty-year aggregate sentence imposed after she pleaded guilty to two counts of Level 3 felony kidnapping.[1] She specifically argues that the trial court abused its discretion in sentencing her and that her thirty-year sentence is inappropriate in light of the nature of the offense and her character. Because we conclude that the trial court did not abuse its discretion in sentencing Hughes and that Hughes' sentence is not inappropriate, we affirm Hughes' sentence.

We affirm.

# Issues

1.  Whether the trial court abused its discretion in sentencing Hughes.

2.  Whether Hughes' sentence is inappropriate.

# Facts

When seventeen-year-old Aarion Greenwood ("Greenwood') was released from the Porter County Juvenile Detention Center in June 2015, he was met by his girlfriend, twenty-six-year-old Hughes; his father ("Father"); his stepmother ("Stepmother"); his brother ("Brother"); and his brother's friend ("Brother's Friend"). Greenwood, his family, and his friends immediately drove to a nearby motel to retrieve a firearm that Greenwood had given to a friend,

---

[1] IND. CODE § 35-42-3-2.

eighteen-year-old Aareon Lackey ("Lackey"). Hughes drove a car in which Greenwood, Brother, and Brother's Friend were passengers. Other family members followed behind in a van. The two vehicles arrived at the motel, and the group confronted Lackey about the gun. When Lackey told the group that he did not know where the gun was, the group forced Lackey and his sixteen-year-old brother, Antonio, ("Lackey's Brother") to leave the motel without their shoes or cell phones. As Lackey's Brother got into Hughes' car, Lackey attempted to get into the same vehicle. Father, however, forcefully directed Lackey to get into the van.

[4] Hughes drove Greenwood, Brother, and Lackey's Brother to a trailer park to look for the gun. On the way, Greenwood struck Lackey's Brother in the mouth, drawing blood. Other family members and Lackey followed in the van. When the group arrived at the trailer, Brother got out of the car and approached the van, where Stepmother handed him a gun and told him that she did not trust anyone in the trailer. Brother's Friend got out of the van holding a gun. When no one answered the trailer's front door, Brother gave the gun back to Stepmother and got back into the car with Hughes, Greenwood, and Lackey's Brother, and the two vehicles drove away.

[5] Hughes subsequently followed the van down a narrow access road and into a field. Lackey and his brother were forced out of the vehicles and led into the woods where Stepmother shot and killed them both. Their decomposing remains, including bones and teeth, were discovered in July 2015, and they were identified through dental records.

[6] In September 2015, the State charged Hughes and her co-defendants with two counts of murder, two counts of felony murder, and two counts of Level 5 felony kidnapping. Two years later, Hughes pled guilty to two counts of Level 3 felony kidnapping in exchange for the dismissal of the other counts. At the guilty plea hearing, Hughes admitted to the facts contained in the stipulated factual basis.

[7] At the sentencing hearing, the State pointed out that the Lackey brothers had been "left in those woods rotting, torn apart by animals, and denying the ability of their parents to kiss them goodbye one last time and bury them" (Tr. 25-26). The State further pointed out that all that was left of the Lackey brothers was "bones, teeth, pieces of hair[,] and clothing." (Tr. 26). In addition, the State argued that at "any point in time, [Hughes] could have peeled off, but she didn't. She drove Antonio Lackey to his death in that death mobile, to that farm." (Tr. 29). The State also argued that "after everything was done, she drove away. She knew those boys didn't come out of the woods. They didn't get into the van. They certainly didn't get into the car. She drove away." (Tr. 29).

[8] Evidence presented at the sentencing hearing further revealed that Hughes' four young children had been living with Hughes' mother since 2014, and that Hughes had "signed over parental rights [to her mother]" in 2015. (App. Vol. 2 at 215). In addition, Hughes' prior criminal history included convictions for misdemeanor theft in 2011 and Level 5 felony burglary in 2015. Hughes was

sentenced for the burglary conviction days after committing the offenses in this case.

[9] Following the sentencing hearing, the trial court found as mitigating factors that Hughes had a limited criminal history and that she had accepted responsibility for her actions and pled guilty. The trial court found as aggravating factors that the "crime was a heinous cold-blooded execution of two teenage boys" and that Hughes "had ample opportunity to extricate herself from the situation" and failed to do so. (App. Vol. 2 at 235). Specifically, the trial court explained as follows regarding the second aggravator:

> I'm sure it didn't escalate or spiral out of control after [Greenwood's stepmother] walked those children into the woods. You saw that building up long before it happened. Long before it happened, you knew that this was not going to end well, but you did not extricate yourself at all.

(Tr. 47). Thereafter, the trial court sentenced Hughes to fifteen years for each conviction and ordered the sentences to run consecutively to each other for an aggregate sentence of thirty (30) years. Hughes now appeals her sentence.

## Decision

### 1. Abuse of Discretion

[10] Hughes first argues that the trial court abused its discretion in sentencing her. Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007). So long as the sentence is in the statutory range, it is subject to review only for an abuse of discretion. *Id.*

An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* at 491. A trial court may abuse its discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id.* at 490-91.

[11] Here, Hughes contends that the trial court abused its discretion when it "relied upon aggravating circumstances not supported by the record." (Hughes' Br. 7). Hughes specifically argues that the trial court did "nothing more than us[e] an element of the offense as an improper aggravator." (Hughes' Br. 8). Although it is true that a material element of the crime may not be used as an aggravating factor to support an enhanced sentence, the trial court may properly consider the particularized circumstances of the crime as aggravating factors. *McElroy v. State*, 865 N.E.2d 584, 589-90 (Ind. 2007). Generally, this aggravator is thought to be associated with particularly heinous facts or situations. *Id.* at 590.

[12] Here, the trial court found as aggravating factors the "crime was a heinous cold-blooded execution of two teenage boys" and that Hughes "had ample opportunity to extricate herself from the situation" and failed to do so. (App. Vol. 2 at 235). These particularized circumstances of the crime were proper aggravating factors, which are well-supported by the evidence. Specifically,

Hughes participated in removing the teenaged brothers from their motel room and driving them down a narrow access road, where they were then led into the woods, shot, and killed. Their bodies were left to decay in the woods, and by the time they were found, the only things left were teeth, bones, hair and pieces of their clothing. This evidence supports the trial court's first aggravating factor that the "crime was a heinous cold-blooded execution of two teenage boys." (App. Vol. 2 at 235).

[13] In addition, Hughes was the driver of the car in which Lackey's brother was placed. She drove the young man from the motel to a trailer park. When the group left the trailer park, Hughes followed the van down a remote access road into a field and watched the boys being led into the woods. We agree with the State that Hughes, "who was driving herself in her mother's car, had multiple opportunities to break off from the rest." (State's Br. at 11). This evidence supports the trial court's second aggravating factor. The trial court did not abuse its discretion in its determination of aggravating factors.

[14] Hughes also argues that the trial court abused its discretion when it ordered her two sentences to run consecutively to each other. Specifically, she argues that the trial court failed to balance the aggravating factors against the mitigating factors. However, *Anglemyer* makes clear that, when imposing a sentence, a trial court "no longer has any obligation to 'weigh' aggravating and mitigating factors against each other" and thus "a trial court can not now be said to have abused its discretion in failing to 'properly weigh' such factors." *Anglemyer,* 868 N.E.2d at 491. Hughes' argument therefore fails. The trial court did not abuse

its discretion in failing to balance the aggravating factors against the mitigating factors.

[15] Hughes also appears to argue that the aggravating factors did not support consecutive sentences. A single aggravating factor may be used to both enhance a sentence and to impose consecutive sentences. *See Haggard v. State*, 771 N.E.2d 668, 676 (Ind. Ct. App. 2002), *trans. denied*. Here, the trial court found two valid aggravating factors. We further note that consecutive sentences reflect the significance of multiple victims. *See McCann v. State*, 749 N.E.2d 1116, 1120 (Ind. 2001). "[W]hen the perpetrator commits the same offense against two victims, enhanced and consecutive sentences seem necessary to vindicate the fact that there were separate harms and separate acts against more than one person." *Serino v. State,* 798 N.E.2d 852, 857 (Ind. 2003).

## 2. Inappropriate Sentence

[16] Lastly, Hughes argues that her sentence is inappropriate. Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. The defendant bears the burden of persuading this Court that her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether we regard a sentence as inappropriate turns on the "culpability of the defendant, the severity of the crime, the damage done to others, and myriad

other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008).

[17] The Indiana Supreme Court has further explained that "[s]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Id.* at 1222. "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[18] When determining whether a sentence is inappropriate, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Childress*, 848 N.E.2d at 1081. Here, Hughes was convicted of two Level 3 felonies. The sentencing range for a Level 3 felony is between three and sixteen years with an advisory sentence of nine years. *See* I.C. § 35-50-2-5. The trial court sentenced Hughes to fifteen years for each conviction and ordered the two sentences to run consecutively to each other for an aggregate sentence of thirty years. This is less than the maximum sentence and more than the advisory sentence.

[19]     With regard to the nature of the offense, we agree with the trial court that the offense was a "heinous cold-blooded execution."[2] (App. Vol. 2 at 235). Hughes was part of a group that forcibly removed the Lackey brothers from their motel room and drove them in separate cars to a field, where they were led into the woods, shot, and killed. Their bodies were then left in the woods to decompose.

[20]     Next we turn to the nature of Hughes' character. To the extent that Hughes argues that she was a young mother of four children at the time of sentencing, Hughes' children had been living with Hughes' mother since 2014, and Hughes had "signed over parental rights [to her mother]" in 2015. (App. Vol. 2 at 215). In addition, this was not Hughes' first contact with the criminal justice system. She was convicted of misdemeanor theft in 2011 and Level 5 felony burglary in 2015. In fact, as the State points out, the "burglary case was still pending against her at the time she decided to commit these heinous crimes; she was sentenced on the burglary only days after the events of this case." (State's Br. 18). In addition, we agree with the State that it "speaks very poorly of [Hughes'] character that the realization of facing the consequences of a felony burglary conviction was not enough to dissuade her from deciding her to participate in these even more serious crimes." (State's Br. 18-19). Hughes has

---

[2] Although the murder charges were dismissed when Hughes pled guilty to the kidnapping charges, the trial court was nevertheless allowed to consider the facts of the dismissed charges for sentencing purposes. *See Bethea v. State*, 983 N.E. 1134, 1145 (Ind. 2013) (trial court does not err when considering facts presented relating to crimes under a plea agreement, including those crimes to be dismissed).

failed to meet her burden to persuade this Court that her thirty-year sentence for her two Level 3 felony kidnapping convictions is inappropriate.

[21] Affirmed.

Vaidik, C.J., and Barnes, Sr.J., concur.