Casimir SZPUNAR, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–0202–CR–97.

Court of Appeals of Indiana.

Feb. 27, 2003.

Dean L. Knapp, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

---

## OPINION

MATHIAS, Judge.

Casimir Szpunar ("Szpunar") was convicted of sale of an unregistered security,[1] a Class C felony, and sale by an unregistered broker-dealer,[2] a Class C felony, in Marion Superior Court. He was sentenced to serve concurrent terms of four years with two years suspended for each Class C felony conviction, for a total of two years executed. The trial court then ordered him to serve the executed sentence in a community corrections program. He appeals and raises six issues, which we restate as:

I. Whether the trial court abused its discretion when it found that Szpunar's employment manual was inadmissible;

II. Whether Szpunar's Sixth Amendment right of confrontation was violated when a witness testified as to an absent third party's opinion;

III. Whether the State improperly amended the charging information by making certain statements in its closing argument;

IV. Whether the trial court abused its discretion when it allegedly tendered "conflicting and unclear" instructions to the jury;

V. Whether Indiana Code section 23–2–1–3 is unconstitutionally vague; and,

VI. Whether Szpunar's convictions constitute "post hoc rationalizations" by the State.

Finding that none of the alleged errors require reversal, we affirm.

### Facts and Procedural History

Sometime in 1996, John and Paula Carithers ("Carithers") began consulting with Szpunar regarding certain investment opportunities in response to a radio advertisement they had heard. Tr. p. 29. Szpunar advised the Carithers and helped them invest in promissory notes and real estate. At some point, Szpunar gave the Carithers information about investing in pay telephones through Alpha Telecom. Szpunar informed the Carithers that it would cost them $5000 to invest in one pay telephone and the rate of return would likely be fourteen percent. Tr. pp. 30–31.

On April 10, 2000, Szpunar, as a representative for Alpha Telecom, executed a contract that provided that Alpha Telecom

---

1. Ind.Code § 23–2–1–3 (1989 & Supp.2002); Ind.Code § 23–2–1–18.1 (1989).

2. Ind.Code § 23–2–1–8 (1989 & Supp.2002); Ind.Code § 23–2–1–18.1 (1989).

would sell one pay telephone to the Carithers for $5000.[3] Under the contract, the Carithers were authorized to "operate and manage the pay telephones directly: collect revenues, pay expenses, answer inquiries and complaints, make repairs and perform cleaning and maintenance, etc." or to hire Alpha Telecom to perform such services. Ex. Vol., State's Ex. 1. If the Carithers elected to hire Alpha Telecom to perform those services, Alpha Telecom would receive seventy percent of the adjusted gross revenues generated from the pay telephone. On that same date, the Carithers executed a telephone services agreement with Alpha Telecom. Ex. Vol., State's Ex. 2. The Carithers received monthly checks from this investment for approximately one year, but stopped receiving checks in April or May of 2001 after Alpha Telecom filed for bankruptcy. Tr. pp. 33–34. Alpha Telecom has never applied for securities registration in Indiana, and Szpunar was not registered as a broker-dealer.

On June 7, 2001, the State charged Szpunar with sale of an unregistered security, a Class C felony, and sale by unregistered broker-dealer, a Class C felony. The charging information provided:

> Casimir Szpunar, on or about April 10, 2000, knowingly did sell a security, which is: a telephone services agreement, to Paula Carithers, and such security was not registered with the Commissioner of the Securities Division of the Indiana Secretary of State; [and]

> Casimir Szpunar, on or about April 10, 2000, knowingly did transact business in Indiana as a broker-dealer when [Szpunar] sold a security, which is: a telephone services agreement, to Paula Carithers and [Szpunar] was not registered as a broker-dealer with the Commission-

er of the Securities Division of the Indiana Secretary of State[.]

Appellee's App. pp. 1–2.

A jury trial was held on December 17 and 18, 2001, and the jury found Szpunar guilty as charged. The trial court sentenced Szpunar to serve concurrent terms of four years with two years suspended for each Class C felony conviction, for a total of two years executed. The trial court then ordered him to serve the executed sentence in a community corrections program. Szpunar appeals. Additional facts will be provided as necessary.

## I. Admissibility of the Employment Manual

■■■ Szpunar argues that the trial court abused its discretion when it found that his employment manual, which he contends contained substantial exculpatory evidence, was inadmissible. "A trial court has discretionary power regarding the admission of evidence, and its decisions are reviewed only for an abuse of that discretion." *Moore v. State*, 771 N.E.2d 46, 56 (Ind.2002). An abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the court. *Prewitt v. State*, 761 N.E.2d 862, 869 (Ind.Ct.App.2002).

On December 17, 2001, prior to opening statements, the trial court held a hearing on preliminary matters at which the State argued that Szpunar's employment manual was inadmissible because the manual contained opinions from two attorneys as to whether the telephone services agreement was a security. The trial court determined that the employment manual was inadmissible and the following exchange occurred:

> STATE: Judge, at this time, I'd move in limine that the Defendant, his counsel or any of his witnesses not refer to any

---

**3.** The telephone was located at a discount department store in Wisconsin.

letters by attorneys or any or purported attorneys or any opinions by attorneys purported attorneys, whether or not—

COURT: Until such time as it is admitted into evidence and I because there may be something else I don't know, there may be some other instruments that I don't know, but as to what's before me now, I'll grant that motion in limine.

Tr. p. 25.

Szpunar never attempted to introduce the manual into evidence and did not ask the court to revisit that ruling during trial; therefore, the State argues that he has waived this issue. In *Winn v. State*, 748 N.E.2d 352 (Ind.2001), our supreme court stated, "in order to preserve an error for appellate review, the excluded evidence must be offered at trial to give the trial court an opportunity to rule on its admissibility at that time." *Id.* at 359 (citing *Miller v. State*, 716 N.E.2d 367, 370 (Ind. 1999)). We agree with the State that by failing to offer the employment manual as an exhibit at trial, Szpunar has waived this issue on appeal.[4]

## II. Alleged Violation of Szpunar's Right to Confrontation

■ At trial, the State called Paul Lawson, a deputy commissioner with the Securities Division of the Secretary of State's Office, to testify regarding securities, investment contracts, and registration requirements. During cross-examination, Szpunar questioned Lawson about an investigatory memorandum prepared by Betsy Ault, an investigator with the Securities Division, regarding Szpunar's payphone sales and whether the telephone services agreement at issue constituted an investment contract. The State never

questioned Lawson, or any other witness, about the Ault investigation and memorandum.

■ Szpunar argues that his Sixth Amendment right to confrontation was violated when Lawson testified regarding the Ault investigation and memorandum because he was not effectively able to cross-examine Ault, as she was not called as a witness during trial. The State contends that Szpunar is precluded from asserting this alleged error on appeal because Szpunar was the party who elicited the testimony about which he now complains. "'A party may not invite error, then later argue that the error supports reversal, because error invited by the complaining party is not reversible error.'" *Booher v. State*, 773 N.E.2d 814, 822 (Ind.2002) (quoting *Ellis v. State*, 707 N.E.2d 797, 803 (Ind.1999) (quoting *Kingery v. State*, 659 N.E.2d 490, 494 (Ind.1995))). Because Szpunar was the party who elicited the testimony from Lawson regarding the Ault investigation, we agree with the State that this was invited error, and therefore it is not reversible error.

## III. Alleged Amendment to the Charging Information

■ Szpunar next argues that when the prosecutor made certain statements during his closing argument, he effectively amended the charging information, which prejudiced Szpunar's substantial rights. During closing argument, the prosecutor told the jury that to convict Szpunar, the State was only required to prove that Szpunar sold an investment contract. Szpunar argues that when the prosecutor made that statement, the State "effectively *eliminated* the burden of proving Mr.

4. We also note that the employment manual has not been submitted as part of the record in this appeal because Szpunar failed to offer it at trial, which further hinders our review of this issue.

Szpunar 'knowingly' sold a 'security.' " Br. of Appellant at 14 (emphasis in original).

The State argues that Szpunar waived this issue for appellate review when he failed to object during the State's closing argument. *See Bald v. State*, 766 N.E.2d 1170, 1172–73 (Ind.2002) (failure to object at trial results in waiver of the issue on appeal). We agree that Szpunar waived this issue when he failed to object at trial.

Notwithstanding waiver, however, the State contends that the prosecutor's statement was consistent with the charging information because the term "security" is defined to include investment contracts. *See* Ind.Code § 23-2-1-1(k) (1989 & Supp. 2002). Furthermore, the trial court read the charging information to the jury and instructed them that the State was required to prove that Szpunar knowingly "did sell a security, which is: a telephone services agreement," which was not registered with the Securities Division of the Secretary of State's Office. Appellant's App. pp. 41–43, 45. Under these facts and circumstances, the State did not amend the charging information by making the statement at issue to the jury.

## IV. Jury Instructions

■ Spzunar next argues that the trial court violated his due process rights when it tendered "conflicting and unclear" instructions to the jury. Once again, the State notes that Szpunar did not object to the instructions at issue in this appeal and failed to tender proposed instructions to correct any alleged error; therefore, Szpunar has waived any alleged error in the instructions. *See Clay v. State*, 766 N.E.2d 33, 36 (Ind.Ct.App.2002) ("Failure to object to an instruction at trial results in waiver of the issue on appeal.").

■ Waiver notwithstanding, Szpunar once again argues that the State amended the charging information by making the statement in its closing argument that it only had to prove that Szpunar sold an investment contract, and the trial court failed to give an instruction "to correct the impression to the jury that they could now convict on the sale of an investment contract." Br. of Appellant at 16. Szpunar contends "[a]llowing a jury to believe that it may now find guilt on the sale of an investment contract, instead of a knowing sale of an unregistered security, proved indeed harmful to Mr. Szpunar in the first degree, far beyond 'harmless beyond a reasonable doubt.' " Br. of Appellant at 17.

Szpunar also argues that the trial court failed to give 1) an instruction informing the jury that it must determine if the telephone services agreement was a security and 2) an instruction regarding the phrase "sold an unregistered security," an element of the charged crime, and such omissions were allegedly confusing to the jury; therefore Szpunar's due process rights were violated. Br. of Appellant at 17. As we noted above, Szpunar could have but failed to tender any instructions to correct these alleged deficiencies in the trial court's instructions.

The trial court read the charging information to the jury and instructed them that the State had to prove that Szpunar knowingly "did sell a security, which is: a telephone services agreement," which was not registered with the Securities Division of the Secretary of State's Office. Appellant's App. pp. 41–43, 45. The jury was properly instructed regarding the elements the State had to prove to find Szpunar guilty of the charged offenses. Additionally, although there was no specific jury instruction informing the jury that they had to determine whether the telephone services agreement was a security, to convict Szpunar, the jury was required to find that the telephone services agreement was a security. Under these facts

and circumstances, Szpunar has failed to demonstrate how his due process rights were violated.

## V. The Constitutionality of Indiana Code section 23–2–1–3

Szpunar next argues that Indiana Code section 23–2–1–3 is unconstitutionally vague because it does not specifically define the term security. He contends that application of the statute in this case is void for vagueness because it " 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute,' " and "because it encourages arbitrary and erratic arrests and convictions." Br. of Appellant at 21 (quoting *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (1954)). Initially we note that this claim is waived because it was not properly raised in the trial court. *See Vaillancourt v. State*, 695 N.E.2d 606, 610 (Ind.Ct.App. 1998), *trans. denied* (citing *Regan v. State*, 590 N.E.2d 640, 645–46 (Ind.Ct.App.1992) (holding that "[t]he failure to file a proper motion to dismiss raising a constitutional challenge to a criminal statute waives the issue on appeal.")). However, we choose to address this claim on its merits.

▮▮▮ "When considering the constitutionality of a statute, we begin with the presumption of constitutional validity, and therefore the party challenging the statute labors under a heavy burden to show that the statute is unconstitutional." *State v. Moss–Dwyer*, 686 N.E.2d 109, 112 (Ind.

1997) (quoting *Person v. State*, 661 N.E.2d 587, 592 (Ind.Ct.App.1996), *trans. denied* ). "All reasonable doubts must be resolved in favor of the statute's constitutionality." *Wright v. State*, 772 N.E.2d 449, 457 (Ind. Ct.App.2002).

A statute will not be found unconstitutionally vague if individuals of ordinary intelligence would comprehend it adequately to inform them of the proscribed conduct. The statute need only inform the individual of the generally proscribed conduct and need not list with exactitude each item of prohibited conduct.

*Id.* (citing *State v. Lombardo*, 738 N.E.2d 653, 655–56 (Ind.2000)). A statute will only be found to be void for vagueness if it is vague as applied to the precise facts and circumstances of each case. *Haggard v. State*, 771 N.E.2d 668, 673–74 (Ind.Ct.App. 2002), *trans. denied.* Finally, a statute is not necessarily vague even if a party can demonstrate that the legislature could have provided more precise language. *Id.* at 674.

Indiana Code section 23–2–1–3 provides that "[i]t is unlawful for any person to offer or sell any security in Indiana unless: (1) it is registered under this chapter; (2) the security or transaction is exempted under section 2 of this chapter; or (3) it is a federal covered security." The term "security" is defined in Indiana Code section 23–2–1–1(k),[5] however, this definition is not

---

**5.** Security is defined as

a note, stock, treasury stock, bond, debenture, evidence of indebtedness, an interest in a limited liability company or limited liability partnership and any class or series of an interest in a limited liability company or limited liability partnership (including any fractional or other interest in an interest in a limited liability company or limited liability partnership), certificate of interest or participation in a profit-sharing agree-

ment, commodity futures contract, option, put, call, privilege, or other right to purchase or sell a commodity futures contract, margin accounts for the purchase of commodities or commodity futures contracts, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, viatical settlement contract, any fractional or pooled interest in a viatical settlement contract, voting-trust certificate, certificate of deposit

comprehensive and is subject to interpretation.

■ In this case, the jury, as the trier of fact, had to make the determination of whether the telephone services agreement was a security. The State argued that the telephone services agreement was an investment contract, and the term "security" has been defined to include investment contracts. Ind.Code § 23–2–1–1(k). While the term "investment contract" is not statutorily defined, courts have set forth several tests to determine whether an instrument is an investment contract, and one of those tests, the *Howey* test was established by the United States Supreme Court in 1946. *See S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298–99, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946).

During its investigation of the alleged violations of the Indiana Securities Act, the Securities Division applied the *Howey* test to the telephone services agreement. An investigatory memorandum prepared by the Securities Division investigator was offered as an exhibit by Szpunar and admitted into evidence. Szpunar also offered the administrative complaint filed by the Securities Division against Szpunar as an exhibit, and it was admitted into evidence. The administrative complaint stated that "the investments in the purchase of and the leasing of public pay telephone equipment units are securities." Ex. Vol., Defendant's Ex. D. The State called Paul Lawson, a deputy commissioner of the Securities Division, to testify regarding the definitions of securities, investment contracts, and broker-dealers, the application of the *Howey* test, and the registration

process. This information presented to the jury was sufficient for the jury to make a determination of whether the telephone services agreement was an investment contract and therefore a security.

Indiana Code section 23–2–1–3 is not unconstitutionally vague. After reading the statute, an individual of ordinary intelligence would understand that it is unlawful to sell an unregistered security. Although an individual of ordinary intelligence may not generally understand whether a particular instrument or document falls under the definition of a security, that lack of comprehension does not render the statute void for vagueness in this case because the jury was given sufficient information to determine whether the telephone services agreement was a security.

## VI. Post Hoc Rationalizations

Finally, Szpunar argues that "prosecution in this case is the result of post hoc rationalization." Br. of Appellant at 22. Specifically, he contends that because "he sold the instrument in question long before it had been the subject of a cease and desist order, which he obeyed," in this instance prosecution was "arbitrary and capricious." *Id.* A post hoc rationalization is an explanation offered in support of a decision after that decision has been made. *See Clark v. State Bd. of Tax Comm'r*, 742 N.E.2d 46, 49 (Ind.Tax 2001), *review denied.*

■ The State argues that the concept of post hoc rationalization is not applicable to a criminal conviction because a defen-

---

for a security, certificate of interest or participation in an oil, gas, or mining title or lease or in payments out of production under the title or lease, an automatic extension or rollover of an existing security, or, in general, an interest or instrument commonly known as a "security", or a certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant, option, or right to subscribe to or purchase, any of the foregoing.

Ind.Code § 23–2–1–1(k) (1989 & Supp.2002).

dant is not convicted "because the State decided after the fact that his conduct was criminal or as an explanation for some other action taken by the State." Br. of Appellee at 16. We agree. Szpunar was convicted because a jury found that he knowingly sold an unregistered security. The fact that the Indiana Securities Commissioner filed a cease and desist order against Szpunar before criminal charges were filed against him, does not render the State's decision to prosecute Szpunar for previous conduct a post hoc rationalization.

### Conclusion

Szpunar waived his argument that the trial court abused its discretion when it found that his employment manual was inadmissible. In addition, because Szpunar elicited the testimony concerning the Securities Division's investigation, he invited any alleged error, and therefore, it was not reversible error. While we observe that Szpunar also waived his arguments with regard to the prosecutor's closing statement and the jury instructions, we note that the State did not effectively amend the charging information by making certain statements in its closing argument, and the trial court properly instructed the jury. Finally, Indiana Code section 23–2–1–3 is not unconstitutionally vague, and the State's decision to prosecute Szpunar did not constitute a post hoc rationalization.

Affirmed.

BAKER, J., and RILEY, J., concur.