**Christopher WEST, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 24A04–1005–CR–342.

Court of Appeals of Indiana.

Jan. 28, 2011.

have been reduced from a class D felony to a class A misdemeanor.

John Pinnow, Special Assistant to the State Public Defender, Greenwood, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ian McLean, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Christopher West (West), appeals his convictions of Count I, using fraud or misrepresentation in the offer or sale of a security, a Class C felony, Ind.Code § 23–2–1–12; Count II, the offer or sale of an unregistered security, a Class C felony, I.C. § 23–2–1–3; and Count III, the offer or sale of a security by an unregistered broker-dealer, a Class C felony, I.C. § 23–2–1–8.[1]

We affirm.

---

1. The statutes applicable to West's crimes were repealed in 2008 by Indiana Public Law 27–2007 § 37. They have been recodified as the Indiana Uniform Securities Act at Indiana Code section 23–19–1 *et seq.*

## ISSUES

West raises three issues for our review, which we restate as follows:

(1) Whether the trial court erred in denying West's motion to dismiss;

(2) Whether the trial court erred in instructing the jury; and

(3) Whether there is sufficient evidence to support West's convictions.

## FACTS AND PROCEDURAL HISTORY

In August 2004, Anthony Wiggins (Wiggins) was diagnosed with terminal lung cancer. Wiggins had a $100,000 life insurance policy with Farm Bureau Insurance that he had previously purchased from West, a Farm Bureau Agent. When West learned of Wiggins's condition in July 2005, West notified Wiggins and his wife Taura that the couple could cash out the policy before Wiggins's death and use the money to pay off debts. The couple cashed out the policy and received a $95,000 check from Farm Bureau.

In August 2005, when West delivered the check to the couple, he asked them to invest $90,000 of this money in his partnership, which owned an apartment complex in Indianapolis, Indiana. West explained that he and his partners would own the complex and be responsible for all of the operations, including maintenance. West further explained that the Wigginses would be repaid with interest from the apartment rent money. Taura convinced Wiggins not to invest in the business.

West returned to the Wiggins's home several days later. This time, West asked Wiggins and Taura for $50,000 for his partnership. West showed the couple a document captioned, "Promissory Note." (State's Exh. 1). The document stated that West would repay the Wigginses $2000 per month for ten months and $1000 per month for 80 months, for a total repay-ment of $100,000. West again explained that the Wigginses would not own the apartment building or be responsible for managing it, and that their investment would be repaid from apartment rent money. When Taura was hesitant to give West the money, West became angry and told her to remember all of the trouble he went through to get the $95,000 for the couple.

West continued to telephone the Wiggins's home several times each day regarding the money. Finally, on August 8, 2005, Wiggins told Taura that he was giving West $10,000 for his partnership. Wiggins gave West $2,000 in cash, and Taura wrote West a check for $8,000. West then gave Taura twelve $1,000 post-dated checks written on his personal checking account. West told Taura to cash one check at a time on the fifteenth of each month. When Taura asked West why he only needed $10,000 when he previously asked for $50,000, West explained that his grandmother had invested $30,000 in the partnership.

Taura cashed one check per month for several months until one month when West told her he had insufficient funds to cover the check. Wiggins died on April 11, 2006. Taura tried to cash one of West's checks the following day, but it was refused for insufficient funds. She called West to ask him when she could cash the check. West told her to be patient and he would "make good on [it]." (Transcript p. 184). West did not return Taura's subsequent phone calls about the checks.

In March 2007, Taura reported West to the Indiana State Police. On November 5, 2009, the State charged West with Count I, using fraud or misrepresentation in the offer or sale of a security as a Class C felony for failing to tell Taura and Wiggins that he was not registered as a broker-dealer in the State of Indiana; Count II,

the offer of sale of an unregistered security as a Class C felony for offering to sell an investment contract to Taura and Wiggins; and Count III, the offer of sale of a security by an unregistered broker-dealer as a Class C felony for offering to sell an investment contract to Taura and Wiggins when he was not a registered broker.

On March 8, 2010, West filed a motion to dismiss wherein he alleged that the statutes pursuant to which he was charged were unconstitutionally void for vagueness. The trial court denied the motion. On March 15 and 16, a trial was held. At trial, the evidence revealed that West was not registered with the Indiana Secretary of State as a securities broker. In addition, the investment contract that West offered to the Wigginses was not registered as a security with the Secretary of the State, and West did not tell the Wigginses that the investment contract was an illegal, unregistered security or that he was not registered to offer securities. A jury convicted West as charged. On April 21, 2010, the trial court sentenced him to six years with two years suspended for using fraud or misrepresentation in the offer or sale of a security; six years with two years suspended for the offer or sale of an unregistered security; and six years with two years suspended for the offer or sale of a security by an unregistered broker-dealer. The court further ordered the three sentences to run concurrently.

West now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

At the outset, we note that West was charged with and convicted of offering to sell the security of an investment contract. Specifically, the charging information states in relevant part as follows:

Count I

On or about August 2005, in Franklin County, State of Indiana, Christopher J. West, in connection with the offer of a security ... omitted to state to Taura and Anthony Wiggins the fact that he was not registered as a broker-dealer in the State of Indiana in violation of Ind. Code § 23–2–1–12 (2005).

Count II

On or about August 2005, in Franklin County, State of Indiana, Christopher J. West did offer to sell a security, where said security was neither registered with the Indiana Secretary of State, Securities Division, a federal covered security, nor was it exempted from registration under Ind.Code § 23–2–1–2 (2005). Specifically, Christopher J. West offered to sell an investment contract to Taura and Anthony Wiggins in violation of Ind. Code § 23–2–1–3 (2005).

Count III

On or about August 2005, in Franklin County, State of Indiana, Christopher J. West did knowingly transact business as a broker-dealer as defined in Ind.Code § 23–2–1–8 (2005) without being registered with the Indiana Secretary of State, Securities Division, as required by law, and without being exempt from registration. Specifically, Christopher J. West offered to sell an investment contract to Taura and Anthony Wiggins in violation of Ind.Code § 23–2–1–8 (2005).

(Appellant's App. pp. 12–14). The probable cause affidavit provided the following additional information:

In August 2005, West came to the Wiggins' [sic] home in Laurel, IN and offered to sell the Wiggins [sic] an investment contract in which they would receive a return. The investment would be memorialized by a Promissory Note between the Wiggins [sic] and West which was retained by the Wiggins [sic]. The investment was in an

apartment complex located in Indianapolis, Indiana. The amount of the investment was to be $50,000. The Wiggins [sic] were not to have any involvement in the apartment complex other than provide the $50,000. The Wiggins [sic] did not invest with West for the apartment complex in Indianapolis. West did not indicate to the Wiggins [sic] that this investment opportunity was registered, nor did he indicate he was licensed to sell securities.

(Appellant's App. p. 16).

The charging information and probable cause affidavit clearly reveal that the security in this case was the investment contract. West was not charged with or convicted of offering the sale of a promissory note as he now alleges in his appellate brief. In fact, the promissory note merely memorialized the security; it was not the security itself. Accordingly, arguments directed at the promissory note are not relevant to the issues in this appeal. We now turn to the issues in this case.

## I. *Motion to Dismiss*

■ West first argues that the trial court erred in denying his motion to dismiss because the statutes under which he was convicted were void for vagueness. The crux of his argument is that Indiana Code section 23–2–1–1(k), which defines security, is unconstitutionally vague as applied because the term "investment contract" is undefined.

■ We review the denial of a motion to dismiss for an abuse of discretion. *McCown v. State*, 890 N.E.2d 752, 756 (Ind.Ct.App.2008). A statute will only be found to be void for vagueness if it is vague as applied to the precise facts and circumstances of each case. *Haggard v. State*, 771 N.E.2d 668, 673–74 (Ind.Ct.App. 2002), *trans. denied.* Further, a statute is not necessarily vague even if a party can

demonstrate that the legislature could have provided more precise language. *Id.* at 674.

■ Indiana Code section 23–2–1–1(k) defines security in part as an investment contract. Although the term "investment contract" is not statutorily defined, courts have set forth several tests to determine whether an instrument is an investment contract. *Szpunar v. State*, 783 N.E.2d 1213, 1220 (Ind.Ct.App.2003). One of those tests was established by the United States Supreme Court in *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298–99, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), and interpreted and applied in *American Fletcher Mort. Company v. U.S. Steel Credit Corp.*, 635 F.2d 1247, 1253 (7th Cir.1980), *cert. denied*, 451 U.S. 911, 101 S.Ct. 1982, 68 L.Ed.2d 300 (1981). This test is used in Indiana to determine whether a transaction is an investment contract. *Manns v. Skolnik*, 666 N.E.2d 1236, 1243 (Ind.Ct. App.1996), *trans. denied.* According to the test, an investment contract arises whenever a person (1) invests money (2) in a common enterprise (3) premised upon a reasonable expectation of profits (4) to be derived from the entrepreneurial or managerial efforts of others. *American Fletcher*, 635 F.2d at 1253.

At trial, the State set out this test and applied it to the facts of this case. Although an individual of ordinary intelligence may not generally understand whether a particular instrument or document falls under the definition of a security, that lack of comprehension does not render the stature void for vagueness in this case because the jury was given sufficient information to determine whether the investment contract was a security. *See Szpunar*, 783 N.E.2d at 1220. Accordingly, the trial court did not err in denying West's motion to dismiss.

## II. *Jury Instructions*

 West also argues that the trial court erred in giving jury instructions number 17 and number 21. Jury instruction number 17 provides in relevant part that there is a presumption that a note is a security. (Appellant's App. p. 136). Jury instruction number 21 provides as follows:

> It is not necessary to negative any of the exemptions or classifications in this chapter provided in any complaint, information, indictment, or any other writ or proceedings laid or brought under this chapter, and the burden of proof of any exemption or classification shall be upon the party claiming the benefits of the exemption or classification.

(Appellant's App. p. 140). According to West, "Final instruction 17 in conjunction with final instruction 21 would likely leave the jury with the impression West had the burden of proving the promissory note was not a security." (Appellant's Brief p. 25).

However, as previously discussed, the State had to prove that the investment contract was a security. The promissory note was never alleged to be a security, and neither party had to prove that it was or was not a security. Therefore any error in this instruction would be harmless. *See Adkins v. Poparad*, 222 Ind. 16, 51 N.E.2d 476, 476 (1943) (concluding that any error in instructing the jury on issues other than the main issue is harmless).

## III. *Sufficiency of the Evidence*

Lastly, West argues that there is insufficient evidence to support his convictions because the note was not a security. However, as we have previously discussed, the information never alleged that the note was a security. Rather, the information alleged that the investment contract was a security. West makes no argument that the investment contract was not a security, and we find sufficient evidence to support his convictions.

## CONCLUSION

Based upon the foregoing, we conclude that the trial court did not err in denying West's motion to dismiss or in instructing the jury, and that there is sufficient evidence to support West's convictions.

Affirmed.

ROBB, C.J., and BROWN, J., concur.