

# IN THE
# Court of Appeals of Indiana

Michael Steury,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

September 6, 2024

Court of Appeals Case No.
23A-CR-2380

Appeal from the Allen Superior Court

The Honorable Steven O. Godfrey, Judge

Trial Court Cause No.
02D04-2105-F6-682

---

**Opinion by Judge May**
Judges Vaidik and Kenworthy concur.

**May, Judge.**

Michael Steury appeals following his convictions of Level 3 felony rape[1] and Level 6 felony sexual battery.[2] Steury presents five issues, which we consolidate, revise, and restate as:

1. Whether the statute defining Level 3 felony rape when the victim is unaware that sexual intercourse is occurring is unconstitutionally vague as applied to Steury;

2. Whether the State violated Steury's due process rights in its use of the victim's testimony;

3. Whether the trial court abused its discretion when it declined to give Steury's proffered jury instructions regarding:

   3.1. the definition of "unaware" and

   3.2. the State's burden of proof; and

4. Whether the State presented sufficient evidence to support Steury's convictions.

We affirm.

---

[1] Ind. Code § 35-42-4-1(a)(2) (2014).

[2] Ind. Code § 35-42-4-8(a)(2) (2014).

## Facts and Procedural History

On November 20, 2020, Steury and his girlfriend Rachel Reed met K.O. and K.O.'s boyfriend Nicholas Resor at a bar in Avilla, Indiana. The two couples spent several hours at the bar together drinking, eating, and singing karaoke. As the night progressed, Resor started to feel "pretty drunk," and he noticed K.O. "was getting drunk." (Tr. Vol. 1 at 169.) K.O. was taking medication at the time that caused her to develop rashes whenever she drank alcohol. K.O. told the people at the table about the medication, and she showed them the rashes developing on her skin as she ingested alcohol.

After midnight, the four decided to leave the bar and go to Steury's house in Fort Wayne, Indiana. K.O. recognized she was "pretty drunk" at that point, (Tr. Vol. 2 at 52), and she thought she was too drunk to drive. Resor and Reed were also intoxicated, so Steury drove the three others to his house in his car. Once the four arrived at Steury's house, they continued drinking in Steury's kitchen. Resor noticed K.O. was slurring her words and moving in a "clumsy-ish" manner. (Tr. Vol. 1 at 179.) Reed thought K.O. "was really drunk." (*Id.* at 245.) K.O. was "stumbling around." (*Id.*) K.O. was also "being goofy" and "making weird faces." (*Id.* at 245-46.)

Steury had an L-shaped couch in his living room. After drinking in Steury's kitchen for a while, Resor fell asleep on one end of the couch and Reed fell asleep on the other end of the couch. K.O. "passed out really fast" between Resor and Reed against the portion of the L-shaped couch where the two

sections met at a right angle. (Tr. Vol. 2 at 58.) The next thing K.O. remembered was waking up with Steury's hand down her pants touching her vagina. K.O. rolled over when she realized Steury's hand was in her pants so that his hand would come out. Steury started rubbing K.O.'s hip, and K.O. "moved a little bit more" away from Steury toward Resor. (*Id.* at 61.) Steury started to get up from the couch, and K.O. yelled at him to get away from her. Steury told K.O. "it's your fault, you wanted it" and "if your boyfriend hears . . . he'll break up with you." (Tr. Vol. 1 at 141.) Steury then went into the kitchen. K.O. woke up Resor and ran out of Steury's house with Resor following her.

[5] K.O. ran to the end of the street and called her father. K.O. "was hysterical and crying" but she was able to tell her father "that someone tried to rape her." (*Id.* at 102.) K.O.'s father drove to K.O.'s location and he called 911. Officer Matthew Childs and Officer Chad Squires of the Fort Wayne Police Department responded to the 911 dispatch and arrived at Steury's house shortly thereafter. Officer Childs observed that K.O. "was crying hysterically." (*Id.* at 126.) He spoke with K.O., Resor, Reed, and Steury, and he believed that all four were intoxicated. Officer Squires observed that Steury had "watery glassy eyes" and "the smell of alcoholic beverage on his breath[.]" (*Id.* at 143.) Steury agreed to be interviewed by the police, and Officer Childs transported him to the downtown Fort Wayne police station. Officer Squires drove K.O. to a sexual assault treatment center for a nurse to examine K.O.

[6] Detective Tyree Carr interviewed Steury at the police station. During that interview, Steury acknowledged that he did not know K.O. well, and he stated that he and K.O. had not talked much with each other throughout the night. Steury claimed that after Resor and Reed had fallen asleep on the couch, he and K.O. locked eyes. K.O. then got up from the couch, walked around to the back of the couch, took off her pants, and leaned over the couch. He asserted that he followed her and then had sex with her from behind. Steury indicated that he and K.O. did not say anything to each other before going behind the couch to have sex. At the conclusion of the interview, Detective Carr took a sample of Steury's DNA.

[7] At the sexual assault treatment center, the nurse took DNA samples from K.O.'s vagina, anus, and buttocks. The nurse also collected K.O.'s underwear and pants for DNA testing. K.O. only told the sexual assault nurse about waking up with Steury's hand down her pants because that was the only event she remembered at the time of her exam. The Indiana State Police Lab subsequently tested the DNA samples collected from K.O. and Steury and found very strong support that Steury's DNA was present inside K.O.'s vagina and anus. A couple of days after her sexual assault examination, K.O. began to recall more events. She remembered that she "was bent over the couch, and [Steury] was behind [her.]" (Tr. Vol. 2 at 70.) She remembered feeling "limp" with her upper body and face against a cushion. (*Id.*) She also remembered feeling pressure against her vagina.

[8] On May 18, 2021, the State charged Steury with Level 6 felony sexual battery, and on July 9, 2021, the State amended the charging information to additionally charge Steury with two counts of Level 3 felony rape. On May 25, 2022, Steury filed a motion to dismiss the two Level 3 felony rape charges. He argued that it would be unconstitutional to convict him of those two charges based on "the State's legal theory that the complaining witness was in the temporary condition of 'black out drunk' as opposed to unconscious." (App. Vol. 2 at 75.) The trial court held a hearing on Steury's motion to dismiss on August 26, 2022. At that hearing, the State argued that by emphasizing unconsciousness, Steury was "ignoring the not aware, and lacking knowledge or acquaintance aspects of the definition [of unaware] that the Court has utilized for decades in regards to these types of sexual assault statutes." (Tr. Vol. 1 at 57.) The trial court issued an order denying Steury's motion to dismiss on August 30, 2022.

[9] The trial court held Steury's jury trial beginning on August 14, 2023. At trial, K.O. testified that after arriving at Steury's house, Steury went into the kitchen and pulled out a clear liquor bottle. She testified "at that point I was pretty drunk; I can't remember a whole lot after." (Tr. Vol. 2 at 55.) K.O. then testified she "ended up going in the living room and laying down eventually." (*Id*.) K.O. explained she remembered lying down on the couch with Reed and falling asleep until waking up with Steury's hand down her pants. Steury then questioned K.O. regarding her recollection of events during his cross-examination of her:

Q. You told the jury you remembered going and laying down on the couch.

A. Yes.

Q. And the prosecutor said eventually you fell asleep and you said yes, is that right?

A. Yes.

Q. But you also told them you don't remember a whole lot after the bottle came out in the kitchen, is that correct?

A. Yes.

Q. Should you really remember laying down and going to sleep or are you just assuming hey, that's where I woke up, I must have laid down here to go to sleep?

A. I remember bits and pieces; I remember laying on the couch.

(*Id.* at 79-80.) K.O. acknowledged that, in a 2022 deposition in connection with this case, she testified that she remembered Reed lying down and then the next thing she remembered was waking up with Steury's hand down her pants. When Steury asked K.O. to explain the apparent inconsistency between her trial testimony and her 2022 deposition, she answered: "Over these past couple of years, I've remembered certain things here and there." (*Id.* at 85.)

[10] After the State rested its case, Steury tendered three proposed jury instructions to the trial court. The trial court agreed to give a slightly modified version of

the first of Steury's proposed instructions.  Steury's second proposed jury instruction read: "'Unaware' means not aware: lacking knowledge or acquaintance: UNCONSCIOUS." (App. Vol. 2 at 128) (capitalization in original).  The State objected to the proposed instruction, and the trial court refused to give the instruction.  The trial court explained the proposed instruction was "a little confusing" and not "a complete definition[.]"  (Tr. Vol. 2 at 233.)  Steury's third proposed jury instruction stated:

> To convict the Defendant Michael J. Steury, you as jurors must be convinced by proof beyond a reasonable doubt that the Defendant was aware by a high probability that the victim was unaware at the time of the conduct, or that the victim was so mentally disabled or deficient that consent could not be given at the time of the conduct.

(App. Vol. 2 at 130.)  The State also objected to the trial court giving this proposed jury instruction, and the trial court refused the instruction.  The trial court explained that the content of the proposed instruction was covered by the other instructions.  Steury also renewed his motion to dismiss the two counts alleging Level 3 felony rape on the basis that the statute was unconstitutional as applied to him, and the trial court denied the motion.

[11]  The jury found Steury guilty on all counts.  To avoid double jeopardy, the trial court entered judgments of conviction for one count of Level 3 felony rape and Level 6 felony sexual battery.  The trial court sentenced Steury to a term of nine years in the Indiana Department of Correction for his Level 3 felony rape conviction and a one-year term for his Level 6 felony sexual battery conviction.

The trial court ordered Steury to serve the two sentences consecutively, resulting in an aggregate ten-year sentence.

## Discussion and Decision

### 1. As-Applied Constitutional Challenge

[12] Initially, Steury contends that his Level 3 felony rape conviction should be reversed because the Indiana statute outlawing rape "is unconstitutionally vague as it was applied in his case." (Appellant's Br. at 13.) When a party challenges the constitutionality of a statute, we start from the presumption that the statute is valid and impose a heavy burden on the challenging party to clearly overcome that presumption. *Myers v. State*, 221 N.E.3d 694, 699-700 (Ind. Ct. App. 2023), *trans. denied*.

[13] A party challenging the constitutionality of a statute may advance either a facial challenge or an as-applied challenge. *Hazelwood v. State*, 3 N.E.3d 39, 42 (Ind. Ct. App. 2014), *reh'g denied*. "A facial challenge to the constitutionality of a statute requires that the party claiming the unconstitutionality of the statute demonstrate that there are [sic] no set of circumstances under which the statute can be constitutionally applied[.]" *Id*. (internal quotation marks omitted). In contrast, an as-applied challenge "asks the reviewing court only to declare the challenged statute or regulation unconstitutional on the facts of the particular case." *Id*. "An as-applied challenge requires a court to focus not on the language of the statute itself, but rather whether that statute is

unconstitutionally vague as applied to the conduct of the particular challenger." *Hale v. State*, 171 N.E.3d 141, 148 (Ind. Ct. App. 2021), *trans. denied*.

[14] To succeed on an as-applied constitutional challenge, the challenger must prove that the statute either "failed to provide notice of proscribed conduct to a particular challenger, or that the statute was susceptible to arbitrary enforcement in that specific case, even if the same statute might have permissible constitutional applications in other scenarios." *Id*. "A statute will not be held to be unconstitutionally vague if individuals of ordinary intelligence would comprehend it adequately to inform them of the proscribed conduct. The statute need only inform the individual of the generally proscribed conduct; it need not list with exactitude each item of prohibited conduct." *Baumgartner v. State*, 891 N.E.2d 1131, 1136 (Ind. Ct. App. 2008) (internal citation omitted). "A statute is only void for vagueness if it is vague as applied to the precise circumstances of the case giving rise to the challenge, and the defendant does not meet his burden of showing unconstitutional vagueness by devising hypothetical situations which might demonstrate vagueness." *Gates v. State*, 192 N.E.3d 222, 225 (Ind. Ct. App. 2022).

[15] Steury argues the rape statute failed to provide him with adequate notice that his conduct was proscribed. Indiana Code section 35-42-4-1(a)(2) states that "a person who knowingly or intentionally has sexual intercourse with another person . . . when . . . the other person is unaware that the sexual intercourse . . . is occurring . . . commits rape, a Level 3 felony." Steury acknowledges that this statute outlaws sexual intercourse with a person who is "unaware" due to

unconsciousness, but he "asserts that he was prosecuted under a different theory, the theory that a person can be unaware due to voluntary intoxication even if the person has *not* lost consciousness, but in fact has some memories of the sexual intercourse." (Appellant's Br. at 17) (emphasis in original).

[16]    However, in *Filice v. State*, we held that even if a victim is not fully unconscious, the victim still may not be aware that sexual intercourse is occurring. 886 N.E.2d 24, 33 (Ind. Ct. App. 2008), *trans. denied*. In that case, the victim went to several bars in downtown Indianapolis, and at some point, she ingested "Rohypnol, a notorious date rape drug, [that] causes temporary amnesia by inducing extreme feelings of intoxication in a user." *Id*. at 29. At the end of the night, Filice took the victim to his apartment and attempted to force his penis into the victim's mouth. *Id*. at 30-31. The State charged Filice with Class B felony attempted rape,[3] and he moved to dismiss the charge on the basis that Indiana Code section 35-42-4-1(a)(2) was unconstitutionally vague as applied to him. *Id*. at 31. The trial court denied Filice's motion to dismiss, and at trial, the victim testified that she remembered very little of the evening except for a few flashbacks. *Id*. at 31-32. Filice's roommate testified the victim "was verbally unresponsive, slumped down on a couch, and 'wasn't quite present' approximately five minutes before Filice attempted to rape her." *Id*. at 33. The jury found Filice guilty, and he appealed his conviction to this Court. *Id*. at 32.

---

[3] Ind. Code § 35-42-4-1(a)(2) (1998).

[17] Filice argued that Indiana Code section 35-42-4-1(a)(2) was unconstitutionally vague as applied to him because the statute "cannot fairly be construed to adequately inform an individual of ordinary intelligence that sexual intercourse with a conscious individual under the influence of Rohypnol is proscribed." *Id.* at 33. However, we rejected Filice's argument. *Id.* We observed that while the legislature had not defined "unaware" in the Indiana Code, we had "adopted a dictionary definition of the term—'not aware: lacking knowledge or acquaintance; unconscious'—and held that the victim must be ''unaware' that the sexual act is occurring' for a defendant to be guilty of rape pursuant to the statute." *Id.* at 32 (quoting *Glover v. State*, 760 N.E.2d 1120, 1124 (Ind. Ct. App. 2002), *trans. denied*). We noted "the legislature's decision to use the word 'unaware' in the second subsection [of the rape statute] instead of using the word 'unconscious' is telling and leads us to conclude that the term includes, but is not limited to, unconsciousness." *Id.* at 33. Consequently, we held "the language of the statute is adequate to inform an individual of ordinary intelligence that sexual intercourse with an individual in a Rohypnol-induced state of unawareness is proscribed." *Id.*

[18] Steury notes that, unlike in *Filice*, "there was no allegation or proof of a date rape drug in his case." (Appellant's Br. at 17.) However, the rape statute and our caselaw do not distinguish between a rape victim who was involuntarily drugged and one who became unaware because of voluntary intoxication. *See*, *e.g.*, *Glover*, 760 N.E.2d at 1125 (affirming defendant's rape conviction when he

had sexual intercourse with someone who became unconscious after consuming a large amount of alcohol).

[19] In *Nolan v. State*, we affirmed the defendant's conviction of Class B felony criminal deviate conduct[4] when the victim described herself as "halfway asleep" at the time of the sexual conduct. 863 N.E.2d 398, 401 (Ind. Ct. App. 2007), *trans. denied*. In that case, the defendant, who had a similar build and wore the same Axe body spray as the victim's fiancé, entered the victim's bedroom late at night and performed oral sex on her. *Id*. at 400-01. The victim eventually realized the defendant was not her fiancé, and the defendant ran away when the victim turned on the bedroom light. *Id*. at 401. The defendant argued that the victim "was not 'unaware' under [the criminal deviate conduct statute] because she was only 'halfway asleep.' . . . [S]he was not unconscious and she could not have been unaware of his act." *Id*. at 402. However, we explained "the criminal deviate conduct statute as a whole supports the proposition that 'unaware' is not equivalent to 'unconscious' and that, instead, the legislature intended a broader definition." *Id*. Consequently, we held that the victim "was unaware of [the defendant's] act of deviate sexual conduct on her, even though [she] was not fully asleep." *Id*. at 403.

---

[4] Ind. Code § 35-42-4-2(a)(2) (2004) ("A person who knowingly or intentionally causes another person to perform or submit to deviate sexual conduct when . . . the other person is unaware that the conduct is occurring . . . commits criminal deviate conduct, a Class B felony.") (repealed by P.L. 158-2013, SEC. 438 and P.L. 214-2013, SEC. 37, eff. July 1, 2014).

[20]     Steury cautions that too broad an interpretation of *Nolan* could erode the "knowable line between permitted and proscribed" conduct. (Appellant's Br. at 25.) He also asserts that a broad interpretation of "unaware" could lead to arbitrary enforcement and posits that "under the 'unconsciousness is not required' theory, it is possible for two people, both highly intoxicated, to be guilty of simultaneous rape." (*Id.* at 32.) However, we agree with the State that although "there may be scenarios in which it is unclear if a person is unaware under the rape statute, this is not one of those situations[.]" (Appellee's Br. at 25.) K.O. testified that at Steury's house she "was pretty drunk; [she] passed out really fast." (Tr. Vol. 2 at 58.) K.O. had been too drunk to drive when the two couples decided to leave the bar, and she was stumbling and slurring her words before falling asleep on Steury's couch. Thus, a reasonable person in Steury's position would have understood that initiating sexual intercourse with K.O. was proscribed even though K.O. was not fully unconscious during the entire episode, and we hold that the rape statute is not unconstitutionally vague as applied to Steury.[5]  *See, e.g.*, *Filice*, 886 N.E.2d at 33-34 (holding rape statute was not unconstitutionally vague as applied to Filice because individual of

---

[5] Steury also raises an as-applied constitutional challenge to the portion of the rape statute that outlaws sexual intercourse with a person who "is so mentally disabled or deficient that consent to sexual intercourse . . . cannot be given[.]" Ind. Code § 35-42-4-1(a)(3). However, the trial court only entered a judgment of conviction on the rape count alleging that Steury had sexual intercourse with K.O. when she was unaware that such intercourse was occurring. Because we affirm Steury's conviction on that count, his secondary constitutional challenge is moot, and we will not address it. *See, e.g.*, *Albrecht v. State*, 159 N.E.3d 1004, 1018 n.9 (Ind. Ct. App. 2020) (holding the defendant's arguments regarding the good faith exception and the exclusionary rule were moot and declining to address them), *trans. denied*.

ordinary intelligence would have known sexual intercourse with victim was proscribed even though victim was not fully unconscious).

## 2. K.O.'s Testimony

Second, Steury asserts "the State used the testimony of the complaining party in a way that was fundamentally at odds with her prior sworn testimony." (Appellant's Br. at 15.) "It is well established that 'a conviction obtained through use of false evidence, known to be such by representatives of the State, [falls] under the Fourteenth Amendment.[6] The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.'" *Davis-Martin v. State*, 116 N.E.3d 1178, 1191 (Ind. Ct. App. 2019) (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)) (initial set of brackets in *Davis-Martin*; footnote added), *trans. denied*. "Active or passive behavior by the State that hinders the jury's ability to effectively act as the fact-finder is impermissible and may violate a defendant's due process rights." *Smith v. State*, 34 N.E.3d 1211, 1220 (Ind. 2015). "Whether a party was denied due process is a question of law that we review de novo." *Hilligoss v. State*, 45 N.E.3d 1228, 1230 (Ind. Ct. App. 2015).

Steury notes that K.O. testified in her deposition that she did not remember what occurred after Reed lay down on Steury's couch, but at trial, K.O. testified

---

[6] The Fourteenth Amendment provides: "No State shall . . . deprive any person of life, liberty, or property, without due process of law[.]"

that after Reed laid down, K.O. walked into the living room, laid down, and fell asleep. Steury contends K.O.'s recall of those additional details contradicted her deposition testimony and that "[t]he State made no effort to present both sworn versions of the story and allow the jury to decide between them." (Appellant's Br. at 39.) However, there is no indication that K.O.'s trial testimony about what she did after Reed lay down on the couch was false, particularly considering her testimony that during the approximately two-year period between the deposition and trial, she "remembered certain things here and there." (Tr. Vol. 2 at 85.) Steury's cross-examination of K.O. highlighted the inconsistencies between her deposition and trial testimony,[7] and the jury heard K.O.'s explanation for those inconsistencies. The jury was able to evaluate K.O.'s testimony in light of the inconsistencies and effectively act as a fact-finder, and therefore, the State did not violate Steury's due process rights. *See*, *e.g.*, *Smith*, 34 N.E.3d at 1220-21 (holding defendant's due process rights were not violated when jury was fully aware through questioning by both the State and the defendant that witness's testimony at defendant's trial contradicted her prior testimony at her plea hearing).

---

[7] Steury writes that "the State actively sought to prevent Steury from producing the prior sworn testimony on cross by launching objections as to the form of impeachment by prior inconsistent statement." (Appellant's Br. at 39.) However, we disagree with Steury's characterization of the State's objections. At two points during Steury's cross-examination of K.O., the State objected when Steury read directly from K.O.'s deposition transcript without first showing K.O. the relevant excerpt from the deposition. The State's objections were that Steury's manner of impeaching K.O. did not comply with Indiana Rule of Evidence 613. The State did not seek to prevent Steury from questioning K.O. about the statements she made in her deposition.

## 3. Jury Instructions

[23] Third, Steury challenges the trial court's decision to reject his second and third proposed jury instructions. "We entrust instructing the jury to the sound discretion of the trial court, and we generally review a trial court's instructions for an abuse of that discretion." *Ellis v. State*, 194 N.E.3d 1205, 1214 (Ind. Ct. App. 2022), *trans. denied*. We evaluate the trial court's rejection of a proffered jury instruction by assessing "whether the tendered instruction correctly states the law, whether there is evidence in the record to support giving the instruction, and whether the substance of the proffered instruction is covered by other instructions." *Jackson v. State*, 222 N.E.3d 390, 401 (Ind. Ct. App. 2023). The Jury instructions should provide guidance, and a proffered instruction that tends to confuse the jury is properly rejected. *Ellis*, 194 N.E.3d at 1214.

### 3.1 Steury's Second Proposed Jury Instruction

[24] Steury's second proposed jury instruction concerned the definition of "unaware" and stated: "'Unaware' means not aware: lacking knowledge or acquaintance: UNCONSCIOUS." (App. Vol. 2 at 128) (capitalization in original). The proposed instruction recited verbatim the dictionary definition of "unaware" that we quoted in *Becker v. State*, 703 N.E.2d 696, 698 (Ind. Ct. App. 1998). However, the trial court rejected the proposed instruction because it was "a little confusing" and not "a complete definition[.]" (Tr. Vol. 2 at 233.)

[25] "We expect the jury to rely on its collective common sense and knowledge acquired through everyday experiences, but the trial court has a duty to define

for the jury words of a technical or legal meaning normally not understood by jurors unversed in the law." *Yeary v. State*, 186 N.E.3d 662, 680 (Ind. Ct. App. 2022) (internal quotation marks and brackets omitted). "When a statute employs a word without defining it, courts generally should apply the word's plain, ordinary, and usual meaning, unless to do so would be contrary to the Legislature's intent; but technical words and phrases should be given their technical legal definitions." *Gill v. Evansville Sheet Metal Works, Inc.*, 970 N.E.2d 633, 639 (Ind. 2012).

[26] Here, the term "unaware" in the rape statute does not have a technical or legal definition different from its plain and ordinary meaning, *see Filice*, 886 N.E.2d at 32, and therefore, there was no need for the trial court to define it. *See, e.g.*, *Barthalow v. State*, 119 N.E.3d 204, 212 (Ind. Ct. App. 2019) (holding jury could infer from common sense the meaning of "bodily injury" and trial court did not commit fundamental error by not defining that term). Moreover, the proposed instruction's capitalization of "UNCONSCIOUS" ran the risk of confusing the jury by placing an unnecessary and unwarranted emphasis on that portion of the definition. Consequently, the trial court did not abuse its discretion by rejecting Steury's second proposed jury instruction. *See, e.g.*, *Owen v. State*, 210 N.E.3d 258, 268 (Ind. 2023) (holding trial court did not abuse its discretion by refusing to give defendant's proposed instruction that could have confused the jury), *reh'g denied*.

### 3.2 Steury's Third Proposed Jury Instruction

[27] Steury's third proposed jury instruction read:

> To convict the Defendant Michael J. Steury, you as jurors must be convinced by proof beyond a reasonable doubt that the Defendant was aware by a high probability that the victim was unaware at the time of the conduct, or that the victim was so mentally disabled or deficient that consent could not be given at the time of the conduct.

(App. Vol. 2 at 130.) The State objected to the proposed jury instruction on the basis that its content was already "covered by the knowing pattern instruction that the Court has already given." (Tr. Vol. 2 at 233.) The trial court agreed with the State and refused the instruction.

[28] Likewise, we agree with the trial court. The trial court instructed the jury regarding the proof beyond reasonable doubt standard. (*See* App. Vol. 2 at 117-18 (preliminary instruction on proof beyond a reasonable doubt standard) & 147 (final instruction)). The trial court also instructed the jury regarding the elements of each offense the State charged Steury with committing. With respect to Count II, the trial court instructed:

> Before you may convict the Defendant, the State must prove each of the following beyond a reasonable doubt:
>
> 1. The defendant, Michael J. Steury,
>
> 2. knowingly or intentionally,
>
> 3. had sexual intercourse or performed or submitted to other sexual conduct (as defined in I.C. 35-31.5-2-221.5) with the Victim,

4. when the Victim was unaware that the sexual intercourse or other sexual conduct was occurring.

If the State fails to prove each of these elements beyond a reasonable doubt, you must find the defendant not guilty.

If the State does prove each of these elements beyond a reasonable doubt, you may find the defendant guilty of Count II, Rape, a Level 3 felony.

(*Id.* at 115 (preliminary instruction) & 137 (final instruction).) Regarding Count III, the trial court instructed:

Before you may convict the Defendant, the State must prove each of the following beyond a reasonable doubt:

1. The defendant, Michael J. Steury,

2. knowingly or intentionally,

3. had sexual intercourse or performed or submitted to other sexual conduct (as defined in I.C. 35-31.5-2-221.5) with the Victim,

4. when the Victim was so mentally disabled or deficient that consent to sexual intercourse or other sexual conduct could not be given.

If the State fails to prove each of these elements beyond a reasonable doubt, you must find the defendant not guilty.

If the State does prove each of these elements beyond a reasonable doubt, you may find the defendant guilty of Court III, Rape, a Level 3 felony.

(*Id*. at 116 (preliminary instruction) & 138 (final instruction).) In addition, the trial court instructed the jury regarding the definitions of "intentionally" and "knowingly":

Intentionally or Knowingly is defined by statute as follows:

A person engages in conduct "intentionally" if, when he engages in this conduct, it is his conscious objective to do so.

A person engages in conduct "knowingly" if, when he engages in this conduct, he is aware of a high probability that he is doing so.

(App. Vol. 2 at 143.) Given that the trial court's instructions already informed the jury regarding the elements of each offense, the mens rea component for each offense, and the State's duty to prove each element beyond a reasonable doubt, the substance of the proposed instruction was already covered by other instructions. Moreover, the proposed instruction likely would have confused the jury because it conflated the fourth element of Count II and the fourth element of Count III. Accordingly, we hold the trial court did not abuse its discretion in rejecting Steury's third proposed jury instruction. *See*, *e.g.*, *Lawson v. State*, 199 N.E.3d 829, 839 (Ind. Ct. App. 2022) (holding trial court did not abuse its discretion in rejecting defendant's proposed jury instruction because its content was covered by other instructions), *trans. denied*.

## 4. Sufficiency of Evidence

Finally, we address Steury's contention that the State presented insufficient evidence to sustain his convictions. When faced with challenges to the sufficiency of evidence, we apply a "well settled" standard of review that leaves determinations of the weight of the evidence and credibility of the witnesses to the fact-finder. *Teising v. State*, 226 N.E.3d 780, 783 (Ind. 2024). "We consider only the evidence most favorable to the trial court's ruling and will affirm a defendant's conviction unless 'no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.'" *Id.* (quoting *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000)).

Indiana Code section 35-42-4-1(a)(2) provides that "a person who knowingly or intentionally has sexual intercourse with another person . . . when . . . the other person is unaware that the sexual intercourse . . . is occurring . . . commits rape, a Level 3 felony." Indiana Code section 35-42-4-8(a)(2) states: "A person who, with intent to arouse or satisfy the person's own sexual desires or the sexual desires of another person . . . touches another person's genitals, pubic area, buttocks, or female breast when that person is unaware that the touching is occurring; commits sexual battery, a Level 6 felony."

The evidence most favorable to the verdicts indicates that K.O. was inebriated and "passed out" on the couch in Steury's living room. (Tr. Vol. 2 at 58.) Steury then had sexual intercourse with her. Sometime thereafter, K.O. woke up with Steury's hand down her pants touching her vagina. Steury contends K.O. was not unconsciousness during the intercourse because she remembered

portions of the intercourse, but as we explained above when addressing Steury's as-applied constitutional challenge, the victim does not have to be fully unconscious to be "unaware" sexual intercourse is occurring. Steury also notes that he told Detective Carr that his intercourse with K.O. was consensual, and he contends K.O.'s "first indication that consent was not being given, or had been revoked was when [K.O.] rolled away from him." (Appellant's Br. at 31.) However, the jury was not required to credit Steury's versions of events, and we cannot reweigh the evidence on appeal. *See McMiller v. State*, 90 N.E.3d 672, 676 (Ind. Ct. App. 2017) ("[Defendant's] arguments are requests for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do."). Therefore, we hold the State presented sufficient evidence to sustain Steury's convictions. *See, e.g.*, *Gale v. State*, 882 N.E.2d 808, 818 (Ind. Ct. App. 2008) (holding the State presented sufficient evidence to sustain defendant's rape conviction when defendant had sexual intercourse with victim after she fell unconscious from drinking too much alcohol).

## Conclusion

[32] The Indiana rape statute is not unconstitutionally vague as applied to Steury because a reasonable person in Steury's position would have understood that having sexual intercourse with K.O. while she was significantly inebriated was proscribed even though K.O. later remembered portions of the sexual episode. In addition, Steury's right to due process under the Fourteenth Amendment was not violated when K.O. testified at trial that she recalled certain details that she had not been able to recall during her deposition. The trial court did not

abuse its discretion when it denied Steury's second proposed jury instruction because the term "unaware" in the rape statute does not have a technical or legal definition different from its plain and ordinary meaning and the proposed instruction risked confusing the jury. The trial court also did not abuse its discretion in rejecting Steury's third proposed instruction because the content of that instruction was covered by the other instructions given by the trial court and the instruction conflated the elements of Count II and Count III. Finally, the State presented sufficient evidence to sustain Steury's convictions. Accordingly, we affirm the trial court's judgment.

[33] Affirmed.

Vaidik, J., and Kenworthy, J., concur.

ATTORNEY FOR APPELLANT

Aaron J. Stoll
The Law Office of Aaron J. Stoll, LLC
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana

Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana